198 So.2d 289

**Bobby Ray CLENNEY**

v.

**STATE.**

I Div. 86.

Court of Appeals of Alabama.

April 19, 1966.

Rehearing Denied June 7, 1966.

After Remandment Nov. 15, 1966.

Further Rehearing Denied Dec. 6, 1966.

Michael J. Salmon, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This is an appeal from a conviction of illegal possession of narcotics. Chapter 8, Title 22, Code 1940. Punishment was a prison sentence of ten years.

On January 12, 1965, several law enforcement officers were staked out at Bienville Square in Mobile waiting for a delivery of narcotics. They were looking for a blue Chrysler automobile bearing a Florida tag. While they were waiting they arrested two men, known drug addicts, one of whom was Guy Gibson, and charged them with vagrancy. They noticed an automobile of the above description parked at the southwest corner of the Square with defendant under the wheel. Officer Romagnano told defendant he was parked illegally and questioned him about a driver's license. He produced two Florida licenses issued to John Gregory Brown, not defendant's name. He was asked if he had guns and he said yes and opened the glove compartment, disclosing two guns. Defendant admitted ownership of one of the guns and that he had no permit. He was arrested for carrying concealed weapons. Request to search the automobile was refused and it was driven to the police station and a search warrant was obtained. Narcotics were found in various parts of the car, in the trunk and under the front seat. Some of the narcotics were found in luggage containing Guy Gibson's clothing. The clip to one of the guns was in Gibson's pocket.

Dr. Nelson Grubbs, a State Toxicologist, testified his analysis of the drugs disclosed Methadone, Pentapon, Dehydro-Morphine, Sulfate and Morphine and Codeine. Pentapon contains Morphine.

The search warrant was procured by Detective Mayo from the Judge of the Mu-

nicipal Court of the City of Mobile. The affidavit for the warrant recites:

"Before me, Frank A. Massa, Recorder of the City of Mobile, Alabama, personally appeared Robert T. Mayo, who being duly sworn deposes and says: That he has reason to believe that in the automobile in the City of Mobile, Alabama, there is now being concealed certain property, namely (here describe property) Narcotics, to-wit, anphetamines, barbiturates, herion, marijuana, and/or opium derivatives which are (here give alleged grounds for search and seizure) 1. Received information from a caller that Guy Gibson, a known dope addict, along with a subject by the name of George, last name unknown were to pass some dope in the at 12:30 P.M. on Tuesday, January 12, 1965. They are suppose to be in a blue Chrysler bearing Fla. Tag Number 3WW, rest of numerals unknown. (OVER) These subjects are suppose to pass this dope and leave town today. Guy Gibson has a record for dope offenses in this city. At 12:30 P.M., Tuesday, January 12, 1965, officers Mayo and Romagnano arrested Guy Gibson and Bernie Heil in the square, at approximately 12:45 P.M. Tuesday, January 12, 1965 officer Romagnano saw this 1957 Blue Chrysler come up to the corner of St. Francis and St. Joseph St. bearing Fla. Tag # # 3WW-2407. And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

Same as Above."

Detective Mayo testified he was attached to the vice and narcotics squad; that he was in the Square with the other officers on January 12, 1965; that he arrested Guy Gibson and Bernie Heil; that he knew them and knew they were drug addicts; that he had information through the Department relative to a shipment of dope; when he returned to the Square after taking Gibson and Heil to the police station he saw the officers with the automobile they were looking for and followed them to the police station; that he went upstairs and typed the warrant (sic) and then went to the office of the Judge of the Municipal Court where an oath was administered to him and he related to the Judge some of the circumstances surrounding the request for the search warrant and some of the circumstances were on the warrant. (affidavit) He told the Judge he had arrested the two known dope addicts on the Square. He knew about the pistol but did not relate that fact to the Judge. He related the facts relative to his information being from a reliable source and that he had reason to believe there was narcotics in the car. The warrant was issued.

On voir dire examination by defense counsel this witness testified he typed the affidavit and swore to it before the Judge. The caller referred to in the affidavit was Captain Burch of the police department. The name of Bobby Ray Clenney nowhere appears in the affidavit. Guy Gibson is a different person from Bobby Ray Clenney. He does not know the "George" mentioned in the affidavit. He did not know defendant prior to this time; knows nothing about him, and so far as he knows he had never been known by the name "George." The defendant was not named in the affidavit; that the information he utilized in securing the warrant came to him from Captain Burch and was "information and belief." He had no personal knowledge of any narcotics and did not personally observe any narcotics in the car before securing the warrant.

The search warrant was introduced in evidence and reads as follows:

"Affidavit having been made before me by Robert T. Mayo that he has reason to believe that in the automobile (1957 Blue Chrysler Imperial bearing 1964 Florida Tag # 3WW-2407) in the City of Mobile, Alabama, there is now being concealed certain property, namely (here describe property) Narcotics to-

wit amphetamines, barbiturates, herion, marijuana and/or opium derivatives which are (here give alleged grounds for search and seizure) 1. Received a call from a caller that Guy Gibson, a known dope addict was to pass some dope in the square in the City of Mobile to an unknown person. 2. Guy Gibson is supposed to be in Mobile with a man by the name of George, last name unknown."

In Knox v. State, 42 Ala.App. 578, 172 So.2d 787, we reviewed our statutes and recent federal decisions pertaining to the necessity of showing the existence of probable cause to believe that a state of facts exists for the issuance of a search warrant.

In Aquilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, one of the cases discussed in the Knox case, supra, the affidavit reads as follows:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

The court said:

"The vice in the present affidavit is at least as great as in Nathanson and Giordenello. Here the 'mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession. The magistrate here certainly could not 'judge for himself the persua-

siveness of the facts relied on * * * to show probably cause.' He necessarily accepted 'without question' the informant's 'suspicion,' 'belief' or mere conclusion.

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was 'credible' or his information 'reliable.'"

We are of opinion the affidavit here was deficient on its face and that the underlying facts and circumstances were insufficient on which to base a finding of probable cause. Knox v. State, supra, and cases cited therein.

For the error of the court in admitting the seized articles and the testimony concerning the same in evidence over defendant's objection, the judgment must be and hereby is reversed and the cause remanded.

Reversed and remanded.

CATES, J., concurs in reversal but thinks the cause should be rendered.

PRICE, Presiding Judge.

AFTER REMANDMENT

This cause has been remanded for us to decide whether or not the affidavit was insufficient because it did not name or describe the person to be searched as required by Section 102, Title 15, Code 1940.

In Carney v. United States, 79 F.2d 821, the Circuit Court of Appeals, Sixth Circuit, had under consideration a statutory requirement in the exact wording of Title 15, Sec. 102, Code, supra. It was there said:

"The attack upon the search warrant is twofold; the complaint being that the defendant is not named therein, and that the premises are not with particularity described. The first challenge to the warrant is based upon title 11, section 3 of the Act of June 15th, 1917, being section 613, title 18 USCA, which provides that a search warrant may not issue but upon 'probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched.' The contention is obviously without merit. The clear meaning of the section requires that a person to be searched must be named or described. The instant warrant contains no mandate for any search other than that of property, and the only question here is the sufficiency of the property description."

In Prater v. Com., 216 Ky. 451, 287 S.W. 951, the court said:

"Appellant insists that since the search warrant commanded the search of the automobile 'now being used and occupied and controlled by John Doe, et al.,' there is not a sufficient description of the person to make the search warrant valid. That contention cannot be sustained because this search warrant did not command that any person be searched, and, acting under it, the peace officers did not search the person of any one. If the evidence used against appellant herein had been discovered by a search of his person, there would perhaps have been some force to the argument advanced by appellant that he could not be searched under a search warrant which issued for John Doe with no other description or identification of the person to be searched. Such was not the case here, however, because the evidence used against appel-

lant was discovered by searching the automobile, and that was authorized by the search warrant because the automobile was particularly and exactly described therein."

In the Prater case, supra, the automobile to be searched was described in the affidavit and the search warrant as a "Scripps-Booth automobile touring car, license No. 232504."

In Martini v. State, 200 Md. 609, 92 A.2d 456, the contention was that the search warrant was invalid for inadequate description of appellant. The search warrant directed search of a described automobile, pockets of clothing of persons found in the automobile, who are violating lottery laws, and seizure of body of a white man about 25 years of age. The court held that since the lottery paraphernalia was not obtained by a search of the pockets or person of appellant but was lawfully seized in the search of the automobile it was properly admitted in evidence. The court stated:

"* * * we conclude that the warrant can be sustained as to the search of the automobile even though we assume it is invalid as to 'the white man, about 25 years of age'."

Appellant's counsel cites C. D. Hauger Co. v. Abramson, 215 Ala. 174, 110 So.2d 152, in support of his contention that the search warrant is void because the affidavit fails to name or describe the person to be searched.

In the Hauger case the warrant was for a search of premises. There is nothing in the opinion to indicate whether it was necessary to state the name of the person whose premises it was intended to be searched so as to enable the officer to definitely locate the same.

In the instant case the narcotics were obtained in the search of the automobile. No search was made of defendant's person. We hold that the affidavit and

**626**

search warrant were valid as to the search of the automobile. Detective Joe Romagnano stated defendant was alone in the car. He testified to finding under the front seat of the automobile and in the trunk several hypodermic needles, syringe, eyedropper, blackened spoons, blood stained handkerchiefs, and several bottles containing tablets of different sizes. There were no labels attached to the bottles and none had marked upon them the name of a prescribing physician. These items were introduced in evidence. The officer testified these articles were taken by him to Dr. Grubbs the afternoon of the day they were taken from the car.

Dr. Nelson E. Grubbs, a State Toxicologist, testified Officer Romagnano delivered to him at 4:58 P.M., on January 12, 1965, the items introduced in evidence by the state. He made a chemical analysis of the contents of the bottles and found them to contain Methadone, Pentapon, Dehydro-morphine, Sulfate and Morphine. Methadone is a synthetic morphine. Morphine sulfate is a salt of Morphine. Pentapon is an extract of Opium that contains all of the narcotic ingredients of Opium, including Morphine. In the needles and the other paraphernalia he found Oil of Anise and some crude Opium. Oil of Anise is a substance added to an alcoholic solution of Opium and Morphine to produce a drug known as Paregoric.

Detective Mayo testified that during the search after the articles were found under the front seat, the officers opened the trunk and "we asked him if there was any in there, and he said 'Yes, in that suitcase,' and he pointed to the center suitcase laying on the back there of the car there and we pulled that suitcase out."

■ We are of the opinion the evidence was sufficient to sustain the conviction for unlawful possession of the narcotic drugs. There was no error in overruling the motion for a new trial on this ground.

Affirmed.