359 So.2d 822 (1977)
Harold Otis HATTON
v.
STATE.
8 Div. 941.
Court of Criminal Appeals of Alabama.
November 15, 1977.
As Corrected On Denial of Rehearing December 20, 1977.
*825 Stanley E. Munsey of Heflin, Rosser & Munsey, Tuscumbia, for appellant.
William J. Baxley, Atty. Gen., and Eugenia D. B. Hofammann, Asst. Atty. Gen., for the State.
BOWEN, Judge.
The appellant was charged and convicted of possession of Phentermine contrary to and in violation of the Alabama Controlled Substances Act (Act No. 1407, 1971 Regular Session). The jury fixed his fine at $15,000.00 and the trial judge added a ten year term of imprisonment.
The issues on appeal concern the propriety of the warrantless search of the appellant's automobile, the nondisclosure of the identity of an informant and the admission into evidence of the results of an inventory conducted after the date of the crime charged revealing substantial shortages of drugs.
On Thursday evening, May 27, 1976, around 10:00 o'clock, an informant went to the home of Colbert County Sheriff John Aldridge and asked Sheriff Aldridge "if (he) wanted to catch Mr. Hatton (appellant) with drugs". Sheriff Aldridge, who personally knew the informant, as well as appellant, stated that he was interested in learning whatever information the informant had concerning this matter, and his informant related the following:
(1) That appellant was purchasing pills ". . . on a lot of Friday afternoons at a drugstore on Main Street in Tuscumbia.";
(2) That, he wasn't sure of the name of the drugstore, but when Sheriff Aldridge asked if it was the one run by "Luke Chesteen", informant replied, "`that's the one, that's the one he goes to.'";
(3) That appellant didn't purchase drugs "every Friday, but some Fridays. . . .";
(4) That appellant drove a Lincoln automobile, but that he had access to other vehicles and could possibly be driving an automobile other than a Lincoln;
(5) That appellant purchased a large quantity on each occasion and that he "got them for truckers . . . and carried them back to his (service) station.";
(6) That upon learning additional information concerning future drug activities, he would contact Sheriff Aldridge.
Sheriff Aldridge stated at the suppression hearing that his informant had, on two previous occasions, supplied him with reliable information, and that upon his asking the informant how he knew of appellant's activity, the informant merely stated, ". . . he was in a position to know"; a "position" Sheriff Aldridge stated he knew of.
The next day, Friday, May 28, around 12:00 noon, the informant tried to contact Sheriff Aldridge again, but the Sheriff was out of his office. Sheriff Aldridge had instructed his informant that in case of his absence from the office further information concerning appellant's activities could be relayed through his secretary. The informant communicated to the secretary the following message:
". . . (W)hat we talked (about) the night before was going to take place at 4:00 (PM) and that he would be driving a Lincoln."
Sheriff Aldridge did not return to his office until 4:15 P. M. At that time he discovered the message among other telephone "call-backs" on his desk. The Sheriff *826 stated that he immediately called in Chief Deputy Aycock, briefed him on appellant's activity, and instructed him to take Investigators Conley and May and stake out Tuscumbia Drugs (Chesteen's Drugs). The officers proceeded to the drugstore and strategically positioned themselves on the streets in the drugstore area. Sheriff Aldridge joined the "stake out" about 45 minutes later (5:15 P. M.). Around 6:00 P. M., the appellant arrived in a Lincoln automobile being driven by a man subsequently identified as Ray Willburn. The appellant got out of the car and went inside the drugstore; Deputy Aycock alerted the other officers of appellant's presence by radio communication. Minutes later the appellant exited the drugstore carrying a white paper sack, got into the automobile and left. The appellant's automobile was stopped; four officers were at the scene. The appellant and Willburn were removed from the car, and the warrantless search for the drugs ensued. The white bag containing the controlled substance was found on the floorboard of the passenger (appellant's) side of the automobile. The bag contained two bottles marked "IONAMIN" (Phentermine, 800 capsules total). The appellant was arrested, and a search of his person produced two smaller bottles of Ionamin, each containing 50 capsules.
The appellant denied any knowledge of the presence of the drugs in the sack and testified that he only discovered the pills found in his pocket when they rolled out from under the seat of his automobile after he returned from the drugstore. According to the appellant, someone had "planted" these drugs in his car. The appellant had a regular account at Chesteen's Drugs. Melvin Jeffreys the suspected informant, was an employee of the appellant who had recently been fired. The appellant proved that Jeffreys had the opportunity to plant the drugs in his automobile.

I
The basis of the appellant's first argument is that the trial judge improperly denied his motion to suppress evidence obtained through an allegedly unlawful and warrantless search of his automobile.

A.
The legality of the warrantless stop and search of the appellant's automobile turns on whether the Sheriff and his deputies had probable cause to believe that it contained contraband. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Probable cause exists where the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United, States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
Probable cause may be based solely upon information obtained from a reliable informanthearsay information. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Clenney v. State, 281 Ala. 9, 198 So.2d 293 (1966). A tip may supply the basis for probable cause in and of itself where it discloses (1) some of the underlying circumstances which justify a conclusion that the informer is credible or his information is reliable, and (2) some of the underlying circumstances tending to demonstrate that, in the specific instance in question, he has drawn his conclusion of criminality in a reliable manner. Aguilar, supra. These two tests are the dual "prongs" of Aguilar, the veracity prong' and the basis of knowledge prong. They constitute the initial standard to be applied in assessing the probative value of an informant's information. If the tip fails one of these prongs, the informant's report may still constitute the sole basis for a finding of probable cause if the information provided is in such detail and minute particularity that a "magistrate, when confronted with *827 such detail, could reasonably infer that the informant had gained his information in a reliable way". This is the self-verifying tip. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Less detailed information from a reliable source may also be used as grounds for a finding of probable cause where the key elements of the tip are verified or corroborated. Ex Parte State ex rel. Attorney General v. State, 286 Ala. 117, 237 So.2d 640 (1970); Payton v. State, 47 Ala.App. 347, 254 So.2d 351 (1971). Finally a tip that will not meet any of these standards may still be used in conjunction with a number of other factors of "further support" to show probable cause.
In United States v. Squella-Avendano, 447 F.2d 575, 580 (C.A. 5 1971), the United States Fifth Circuit Court of Appeals commented on the composite test of Aguilar, supra and Spinelli, supra, which is applied where the tip fails to meet the requirements of Aguilar.
"First, if the information provided is in such `detail' and `minute particularity' that `a magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way,' then the report, if sufficiently incriminating, may, without more, be grounds for finding probable cause. Secondly, less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or corroboration of the informant's report to make it `apparent that the informant had not been fabricating his report out of whole cloth.' Corroboration must render the report `of the sort which in common experience may be recognized as having been obtained in a reliable way.' Thirdly, even a report that is not under the above two standards sufficient of itself to establish probable cause may count in the magistrate's determination of probable cause, but only as one of a number of other factors of `further support' given in Spinelli involved law enforcement agencies' knowledge of independent facts which suggest criminal conduct or of facts which take on an aura of suspicion in light of the informant's tip."
Aguilar's veracity prong is not in issue here. The record reveals that the informer had supplied information on at least two occasions in the past and one "case" had been made. The Sheriff testified that he had talked with the informer before in some official capacity as a law enforcement officer and had no reason to doubt the informer. This was sufficient to satisfy the veracity prong of Aguilar. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Ex parte State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 (1970); Moore v. State, Ala.Cr. App., 340 So.2d 882, cert, denied, Ala., 340 So.2d 885 (1976).
However the source of the informant's knowledge was not revealed. The only underlying circumstances presented in the record as the basis of the informant's knowledge are found in the Sheriff's statement that the informant said he "was in a position to know and knowing my informer, I felt he was". This is merely the Sheriff's conclusion from the informant's conclusion. It states no underlying circumstances of how the informant obtained his information and from which he concluded that the appellant was engaged in criminal activity. The mere assertion that the informant speaks from personal knowledge without a factual basis or data illustrative of that conclusion is not sufficient. United States v. Long, 142 U.S.App.D.C. 118, 439 F.2d 628 (1971) claim that information personal not sufficient; Brunson v. State, 506 S.W.2d 594 (Tex.Cr.App.1974) informant's claim that he had "reason to believe" insufficient; Commonwealth v. Smith, 453 Pa. 326, 309 A.2d 413 (1974) informer's statement that he "found out" insufficient.
Additionally, the facts of the tip itself were not so detailed or in such minute particularity that they could be considered self-verifying in and of themselves. Yet the facts relayed to the Sheriff and corroborated by the deputies were of such a nature, *828 in light of all the surrounding circumstances, that it could be reasonably inferred that the informer obtained his information "in a reliable manner and had substantial evidence on which to base his conclusion that the appellant was probably engaged in criminal activity".
In United States v. Brennan, 538 F.2d 711, 720 (C.A. 5 1976) it was noted that "an accumulation of innocent detail conforming to the original tip" may have significant corroborative value.
"Where insufficient information about the tip and the tipster is available to justify reliance upon it alone, investigating officers may supplement the tip by surveillance of the subject or corroboration of key elements of the tip from relatively objective sources. Although there is no consensus on the type of information required to corroborate an informant's tip, it is generally agreed that the better practice is to obtain corroboration of incriminating details. See Spinelli v. United States, supra, 393 U.S. at 414, 89 S.Ct. at 588, 21 L.Ed.2d at 642; Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer.L.Rev. 741 (1974). However, an accumulation of innocent detail conforming to the original tip has been held to have corroborative value. See, e. g., United States v. Holliday. 474 F.2d 320 (10th Cir. 1973)."
See also United States v. Tuley, 546 F.2d 1264 (C.A. 5 1977); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Considering the informant's tip and the corroboration by independent observation we conclude that the Sheriff and his deputies had probable cause to stop and search the appellant's automobile.
The facts and circumstances within the officers' knowledge at the time of the search were (1) the informant's tip, (2) the proven reliability of that informant, (3) the Sheriff's knowledge of both the informant and the appellant, (4) the reputation of the appellant and (5) the officers' verification and corroboration of the informant's report. Admittedly no single factor considered separately would be a sufficient basis for probable cause. Yet when their combined cumulative effect is considered we have a solid probability that a crime has been or is going to be committed.
Reviewing the particulars, we find information from a reliable informant that the appellant is illegally purchasing drugs at a drugstore on Main Street in Tuscumbia on "a lot of Friday afternoons", but not every Friday. The informant verified the name of the drugstore provided by the Sheriff and stated that the purchase would take place about 6:00 o'clock but did not know if it would be the next Friday (the next day). The informant generally described the color of the Lincoln automobile which the appellant would or may use. That automobile had just been purchased by the appellant on the very day the informant reported his information to the Sheriff. Around noon on Friday, the informant left word at the Sheriff's office, as arranged, that the purchase would be made that very Friday at 4:00. When the Sheriff received this message it was 4:15. Chief Deputy Doug Aycock testified that he felt like he had probable cause based on the information he already had plus his knowledge of the appellant. Aycock stated that he had been on "raids" at the appellant's service station but had never arrested the appellant. The trial court would not allow the state to ask Deputy Aycock if he had ever "on many occasions had suspicion that Mr. Hatton either had drugs or had them within his possession". On rebuttal in the trial on the merits, the Sheriff testified that he had known the appellant for fifteen years and that his general reputation was bad. The reputation of the accused, though insufficient in itself to support a finding of probable cause may do so when combined with other factors. United States v. Brown, 150 U.S.App.D.C. 113, 463 F.2d 949 (1972); Rushing v. State, 500 S.W.2d 667 (Tex.Cr.App.1973). A finding of probable cause may rest upon evidence which is not legally competent in a criminal trial. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
*829 The story of a reliable informant was corroborated by the independent observation of the deputies. The predicted events happened almost precisely as foretold, except that the appellant arrived approximately two hours after the informant stated. We note that originally the informant predicted the correct arrival time of the appellant at the drugstore. Under these circumstances we do not consider the mere delay of the appellant's arrival to vitiate a finding of probable cause. The arresting officers would not be required to have seen the narcotics in order to furnish reasonable cause to believe that the appellant did in fact have them in his possession when he left the drugstore carrying a white paper bag. Clenney, supra.
In light of the facts and circumstances within the officers' knowledge, we do not think that Sheriff Aldridge could have ignored, consistent with his duty to enforce the law, the inference that narcotics were probably in the possession of the appellant. Clenney, supra, 281 Ala. at 13, 198 So.2d 293.
We recognize that the probable cause present in this case represents the bare minimum necessary for a valid search without a warrant. Yet here we have more than a mere whim, caprice, or naked suspicion. The "probabilities" implied by the term "probable cause" are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Brinegar, supra. Probable cause does not preclude all room for doubt nor need the officers be absolutely certain and positive that a crime is in the making.

B.
In further support of his argument that a search warrant should have been obtained the appellant argues that "the seizure was made not at the plum thicket but in the shadow of the courthouse". See York v. State, 43 Ala.App. 54, 57,179 So.2d 330, 333 (1965). This has reference to the fact that the appellant's automobile was stopped and searched within four blocks of the county courthouse. The appellant contends that he should have been arrested, a search warrant obtained and then the search conducted. This question was answered in Chambers v. Maroney, 399 U.S. 42 at 51, 90 S.Ct. 1975 at 1981, 26 L.Ed.2d 419 (1970).
"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the `lesser' intrusion is permissible until the magistrate authorizes the `greater'. But which is the `greater' and which the `lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."
As Chambers specifically noted, "there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained". 399 U.S. at 52, 90 S.Ct. at 1981.
The Sheriff actually obtained information at 4:15 that the illegal purchase was to occur at 4:00. Under these circumstances it was not reasonably practicable to obtain a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
There is no litmus paper test for determining probable cause. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430,434, 94 L.Ed. 653 (1950) and each case must be determined upon its own facts and circumstances. Reviewing the conditions in this instance we find that the warrantless search of the appellant's automobile was constitutionally permissible.

II
The second contention of the appellant is that the trial court erred in refusing to *830 allow defense counsel to examine witness Melvin Jeffreys on the issue of whether he was the informant. Defense counsel stated to the trial judge that Jeffreys was suspected of being the informant and that he was neither credible nor reliable and was involved in a conspiracy or "set up" of the appellant. At trial the appellant testified that someone had "planted" the drugs in his automobile without his knowledge. The defense called Jeffreys as a witness at the suppression hearing. At the trial on the merits defense counsel attempted to prove his suspected identity as an informant. The trial court disallowed every inquiry into the informant's identity.
The general rule is that the prosecution is privileged to withhold from the accused disclosure of the identity of an informant. Davenport v. State, 50 Ala. App. 321, 278 So.2d 769 (1973). This general rule is qualified and the state's privilege to withhold an informant's identity must give way where that identity is "relevant and helpful to the defense of the accused, or is essential to a fair determination of the case". Roviaro v. United States, 353 U.S. 53, 60-61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957); Hood v. State, 47 Ala.App. 192, 252 So.2d 117 (1971); Dixon v. State, 39 Ala. App. 575, 105 So.2d 354 (1958); Handley v. State, 214 Ala. 172, 106 So. 692 (1925); generally see annotation, 76 A.L.R.2d 262 (1961). When probable cause is in issue there is no fixed rule requiring or precluding the disclosure of the informant's identity and responsibility for striking the proper balance between the state's interest in nondisclosure and the defendant's interest in preparing his case rests in each instance with the trial judge. United States v. Anderson, 509 F.2d 724, 729 (C.A. 9 1975). The disclosure of the identity of an informant who provided information constituting probable cause for a warrantless search is not constitutionally required. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The burden rests upon the accused to show such disclosure. United States v. Prueitt, 540 F.2d 995, 1004 (C.A. 9 1976).
Applying these principles to the facts before us we observe that the entire defense centered around the contention that the appellant did not purchase the drugs and had no knowledge of their presence in his automobile until they rolled out from under his seat. The appellant did not merely speculate that the testimony of Melvin Jeffreys, the suspected informant, would have been helpful to his defense but presented testimony to show that Jeffreys had the motive and opportunity to secrete the pills in the appellant's automobile. Thus Jeffreys' testimony as to whether he was the informant became a relevant and material factor in the presentation of the defense on the guilt or innocence of the appellant on the merits. In view of the fact that the source (or basis of knowledge) from which the informant obtained his information was never revealed, the action of the trial court in preventing defense counsel from ascertaining Jeffreys' identity as the informant became even more significant. Under these circumstances the defense should have been permitted to show that the suspected informant was or was not the true informer. While Jeffreys could not have been compelled to incriminate himself, his testimony or lack of it should have been allowed to be presented to the jury under the asserted defense; advanced to the charge in this case. The informant's possible testimony was highly relevant in that he might have disclosed a "set up", throw doubt upon the guilt of the appellant or testified to the appellant's possible lack of knowledge of the presence of the pills. Roviaro, supra; McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967).
Thus where the appellant alleged that he knew who the informant actually was, that the suspected informant's actions were the sole cause and reason for the prosecution of the appellant, that the informer had actually set up the appellant and where the defense called the suspected informer as a witness in order to verify his identity, fundamental fairness dictates that the appellant should have been permitted to examine *831 the suspected informant in line with his entire theory of defense. If Jeffreys were the informant as suspected, there would have been no reason for maintaining the privilege of nondisclosure for the simple reason that his identity was already known. However, if Jeffreys were not the informant then no harm would have resulted and the state would not have been prejudiced because the true informant would still remain unidentified. We particularly noted that the appellant was not on a mere fishing expedition to uncover the identity of an informant. He was concerned only with one individual he allegedly knew to be the informant.
Balancing the interests of the state and the accused, we find that the scales tip heavily in favor of the accused. Here the disclosure presented a "real possibility of affording a defense that would create a reasonable doubt in the mind of a reasonable juror". United States v. Edmonds, 535 F.2d 714, 718 (C.A. 2 1976). Defense counsel should have been permitted to inquire into suspected identity of Jeffreys as the informer. The action of the trial court in preventing such inquiry was reversible error.

III
The final contention of the appellant is that it was reversible error for the prosecution to present and the trial court to allow testimony that on the day after the appellant's arrest agents of the "Drug Investigation Unit" conducted an inventory at Chesteen's Drugstore and discovered a substantial shortage of Ionamine 30, "as much as 17,000" pills. This was the same type drug found in the appellant's possession. The appellant was only charged with and shown to have had 900 capsules.
The objected to evidence is patently inadmissible. It has no tendency, however slight, to shed any light on the main inquiry at issue; Ward v. State, 52 Ala.App. 392, 293 So.2d 307 (1974). It has no logical reference or causal connection to the facts in issue and affords no reasonable inference to any matter under inquiry and is utterly without probative value. It is immaterial because it does not give rise to an inference that is an ultimate issue in the case. Additionally it is blatantly prejudicial to the accused, the only inference being that the appellant is also guilty of the theft of the other drugs.
The indictment is the compass and North Star of any criminal prosecution. The state must navigate its case according to the indictment or risk venturing into the waters of prejudicial and reversible error. The evidence of the inventory tends to show the commission of a separate and distinct crime than that charged in the indictment. For these reasons this case is also due to be reversed.
For the reasons set forth in this opinion this case is hereby reversed and remanded for new trial.
REVERSED AND REMANDED.
TYSON, P. J., and HARRIS and BOOKOUT, JJ., concur.
DeCARLO, J., concurs in result.

ON REHEARING
In response to the state's request for additional facts we add that, though the appellant called Jeffreys during the trial in chief, defense counsel did not specifically ask him if he was the informant, although Jeffreys did deny ever "working for" the sheriff. The trial court did, pursuant to the state's objection, disallow every attempt made by the appellant throughout the trial to discover the identity of the informer through other witnesses.
This will not change the result of this cause. While we still adhere to the general rule that the state is not required to disclose the identity of an informer to the accused and that disclosure will be required only in the exceptional instance, each case must be considered on its own merits. The value of nondisclosure must be balanced against the prejudice resulting to the accused.
*832 We have considered the additional arguments advanced by the state on rehearing and find them to be without merit.
APPLICATION OVERRULED: OPINION CORRECTED AND EXTENDED.