Appellant was adjudged guilty of felony possession of marijuana. At a subsequent probation hearing, the trial judge sentenced him to a term of six years in the penitentiary. The sentence was reduced to three months in the county jail at hard labor with a suspension of the balance of the six year term. The trial judge also placed the appellant on probation for five years and fined him $5,000. Because the key issue in this case involves the warrantless search of the appellant's automobile, it is necessary to go into the facts and circumstances leading up to and surrounding the search.
On the morning of July 19, 1978, Robert Grant, a Hartselle police officer assigned to the Morgan County Drug Unit, received a telephone call from an unidentified female informant. The anonymous caller told him that Thomas Martin Murray from St. Petersburg, Florida, was in the Decatur area transporting and selling large quantities of marijuana. She apprised Officer Grant that appellant would be driving a 1973 Mazda automobile containing approximately 100 pounds of marijuana. She further identified two local buyers: John Strome and an undisclosed person who was still under investigation by law enforcement agencies at the time of trial. She did not explain to Officer Grant how she secured her information. Grant admitted that the unidentified female informer had never tipped the police before and did not know prior to appellant's *Page 127 
arrest whether she was a habitual liar or whether she was a trustworthy, credible person.
Immediately following the informant's call, Grant telephoned the St. Petersburg police narcotics division. He spoke with Detective Jim Rainey who informed him that the appellant had been under investigation since 1974 for narcotics trafficking. However, Detective Rainey did not confirm appellant's ownership of a Mazda automobile and failed to recognize the names of the two Decatur buyers revealed by the informant.
Neither the appellant, Strome, nor the undisclosed buyer was under investigation by Decatur authorities before this telephone tip although the undisclosed buyer was a suspect in other illegal activities. Later, on the same day, Grant did verify the undisclosed buyer's address furnished by the unidentified informant.
At approximately 9:30 a.m. on July 20, 1978, Deputy Walter Price of the Morgan County Sheriff's Department received a telephone call from an unidentified female informant. Officer Grant was in his office when the call came in, and it was Deputy Price's opinion that the same woman placed both of those calls. She related that the appellant lived at 406 Bradley Street, S.W., in Decatur, and that he drove a 1973 Mazda automobile with blue tinted windows. She disclosed that the appellant had arrived in the Decatur area the night before and would depart around noon that day en route to Florida with a large quantity of marijuana in the trunk of the car. She told the deputy sheriff that Strome owned a white Honda automobile and worked at Champion Paper Company. She also gave an approximate address of both Strome and the undisclosed buyer. Deputy Price conceded that he did not know the identity of the informer and had never spoken with her before this particular telephone call. He had never heard of John Strome or the appellant until Officer Grant recounted his telephone conversation of the day before to him.
After the second telephone tip, Deputy Price and Officer Grant proceeded to the Bradley Street address where they observed a white Honda, a gold Ford Fiesta, and a blue Mazda with blue tinted windows parked in the front yard. They ran a registration check on the license plate of the Mazda which revealed that the automobile was registered to Thomas Martin Murray residing at 406 Bradley Street, S.W., Decatur, Alabama. Around 10:00 a.m. they set up a surveillance of the residence accompanied by Jim Cox and Tom Little of the Alabama Alcoholic Beverage Control Board and Decatur policeman Ed Taylor.
At 11:30 a.m. a woman with a small child walked out of the house and drove away in the gold Ford Fiesta. A few minutes later the appellant emerged from the house and removed two large bags of dog food from the trunk of the white Honda and leaned them against the closed garage door. He also took out a small brown paper bag and carried it to the blue Mazda. He then got under the car and lay there for a few minutes appearing "to be doing something under the front end of the Mazda." Then he got up, put the paper bag into the trunk of the Mazda, opened the garage door, placed the dog food inside the garage, and went back inside the house. Shortly after noon the appellant appeared outside again, closed the trunk of the Mazda, and walked to the next-door residence of an off-duty deputy sheriff to help him start his car. After a short time he returned to his residence and, just as appellant started to go inside the house, the woman and child reappeared in the gold Ford Fiesta, and he walked back into the yard. Another man, identified later as John Strome, came out of the house and stood by his car while he watched the appellant turn the Mazda around and back the vehicle partially into the garage. The surveillance team saw the appellant moving around the open trunk in the rear of the garage before he closed the trunk. Then both men went inside the house. At 12:55 p.m. they both walked outside again. Appellant procured a Doberman pinscher from his back yard, put the dog in the back seat of the Mazda, and drove away. *Page 128 
Agent Cox radioed this information to the other investigators. Agent Little and Officer Taylor began following the appellant's vehicle as soon as it left Bradley Street. A few miles away, on Highway 67 in Morgan County two turnoffs before reaching I-65, they turned on the blue light and stopped the appellant. The appellant pulled off the road and walked to the back of his automobile where the police vehicle had stopped. Appellant gave the officers his Florida driver's license upon their request, although they never told the appellant why they were stopping him.
Deputy Price drove up and, after identifying himself, asked the appellant if he could search the Mazda. Deputy Price admitted that the appellant answered, "I would rather you wouldn't," but, nevertheless, the deputy sheriff walked to the driver's side of the car to take the keys out of the ignition. He considered the large Doberman pinscher in the back seat and inquired whether the dog would bite, whereupon the appellant said that it would. The appellant then reached in the car himself and removed the keys and handed them to the deputy. Deputy Price opened the trunk and discovered an 18" X 20", 40 pound cube of plant material which appellant's counsel stipulated at trial was marijuana. Deputy Price then placed the appellant under arrest for felony possession of marijuana.
At the conclusion of the State's case, appellant's motion to exclude the evidence on the ground the State failed to prove a prima facie case was denied. Appellant rested his case without testifying and without presenting any witnesses on his behalf.
Appellant contends that the trial court committed reversible error by admitting into evidence, over objection, testimony and physical evidence which were the "fruits" of an illegal warrantless search of his automobile.
It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." Katzv. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514,19 L.Ed.2d 576 (1967). Those exceptions are succinctly set out inDaniels v. State, 290 Ala. 316, 276 So.2d 441 (1973):
 "(1) In `plain view,' see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
 "(2) With `consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
 "(3) As `incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In `hot pursuit' or `emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1947); State v. Sutton (Mo. 1970) 454 S.W.2d 481;
 "(5) Where `exigent circumstances' exist coincidental with `probable cause' (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and,
 "(6) In `stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968)." (Footnote omitted.)
Because the search at issue in this case was conducted without a warrant issued upon probable cause, it can pass constitutional muster only if it is shown that it falls within one or more of the above exceptions. The burden is on the State to make such a showing. Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Gaioni v. Folmar,460 F. Supp. 10 (D.C.Ala. 1978); Rueffert v. State, 46 Ala. App. 36, 237 So.2d 520 (1970); Adair v. State, 53 Ala. App. 251,298 So.2d 671 (1974); Kelley v. State, 55 Ala. App. 402,316 So.2d 233 (1975); Minnifield v. State, Ala.Cr.App., 390 So.2d 1146
(1980). The State argues that the case sub judice falls within both the consent exception and the probable *Page 129 
cause/exigent circumstances exception to the warrant requirement.
 I
The record in the instant case fails to meet the standard required to affirmatively establish consent. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina,391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968);Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854 (1973). Clear and convincing evidence of waiver is required, and the burden of proving waiver is on the party claiming it, i.e. the State. Rueffert, supra.
The failure to inform the accused of his right to refuse to consent is a factor to consider in determining voluntariness, but is not given controlling significance. Weatherford v.State, Ala.Cr.App., 369 So.2d 863, cert. denied, Ala.,369 So.2d 873 (1979). "Further, the State must prove there was no duress or coercion, express or implied. The consent must be unequivocal and specific, and freely and intelligently given. There must be clear and positive testimony." Hardy v. State,53 Ala. App. 75, 78, 297 So.2d 399 (1974). Courts indulge in every reasonable presumption against waiver of fundamental Fourth Amendment rights. Duncan v. State, 278 Ala. 145, 176 So.2d 840
(1965). "An open door is not a waiver of such rights. A peaceful submission to a search or seizure is not a consent or an invitation thereto, but is merely a demonstration of regard for the supremacy of the law." Knox v. State, 42 Ala. App. 578,582, 172 So.2d 787 (1964).
In United States v. Smith, 308 F.2d 657 (2nd Cir. 1962), it was stated:
 "When a law enforcement officer knocks at the door, identifies himself, and asks to be allowed to search the premises, the acquiescence thus obtained is generally not considered to be voluntary consent. . . ."
Likewise, in Henderson v. State, 49 Ala. App. 275, 270 So.2d 822
(1972), this court held that a mere showing that an accused gave officers the keys to her car upon their request to search it was insufficient to show a voluntary waiver of her Fourth Amendment rights.
In Henderson, supra at 277, this court stated:
 "When the State relies upon consent to justify a search and seizure of evidence to incriminate, the consent must be given under circumstances to justify a waiver of known rights. This is not a matter that can be presumed, but the State had the burden of proving that the consent or waiver was given voluntarily without inducement or coercion and with knowledge of the right to refuse the request to search. . . ." (Citations omitted.)
The facts in Henderson are closely akin to those in the instant case concerning the presumed waiver. There, the record showed the officers had the accused in custody and asked if they could search her car. She stated that they could. The record was silent as to the absence of any coercion or intimidation or as to any inducement offered to obtain consent. There, as in the instant case, the State failed to go beyond the mere request of the officers to conduct the search.
In the instant case, the appellant did not give verbal permission to search his car. He in fact stated that he would rather not submit to a search. Nevertheless, one of the officers attempted to take the keys from his car in order to search the car trunk. When he was thwarted by appellant's dog, the record only shows that appellant reached in the car and got the keys for the officer. That was apparently to prevent the officer from being bitten or to prevent injury to his dog, for it was apparent from the record that the officers were going to search the car with or without the appellant's consent. The instant record more strongly shows a lack of consent than the record in Henderson, supra, wherein the search was held to be illegal. We therefore conclude that the State failed to establish a valid consent to search. Whether the *Page 130 
search was legal then rests upon whether exigent circumstances existed coincidental with probable cause.
 II
The State insists that the "exigent circumstances coincidental with probable cause" exception should be applied in this case. We disagree.
It is evident from the language of the Fourth Amendment that a search warrant may only be issued upon an affidavit which sets forth enough facts to establish probable cause. Before a warrantless search can be conducted, there still must exist facts and circumstances which constitute probable cause since the amendment requirements cannot be less stringent than when a warrant is obtained. The legality of the warrantless stop and search of appellant's automobile turns on whether the law enforcement officers had probable cause to believe that it contained contraband. Exigent circumstances existed in the instant case due to the use of the automobile. Rickman v.State, Ala., 361 So.2d 28 (1978). Therefore, the remaining issue is whether probable cause existed coincidentally.
In Fennell v. State, 51 Ala. App. 23, 29, 282 So.2d 373, cert. denied, 291 Ala. 778, 282 So.2d 379 (1973), the Alabama Supreme Court stated:
 "Reasonable ground for belief of guilt or probable cause means more than a good faith suspicion. Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. . . ."
Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280,69 L.Ed. 543 (1925); Baker v. State, Ala.Cr.App., 340 So.2d 854, cert. denied, Ala., Ex parte Baker, 340 So.2d 860 (1976).
Many cases have recognized that probable cause may be based solely upon hearsay information provided by an unidentified informant. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253,2 L.Ed.2d 1514 (1958); Aguilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Clenney v. State, 43 Ala. App. 622,198 So.2d 289 (1966); Hatton v. State, Ala.Cr.App.,359 So.2d 822, writ quashed, Ala., 359 So.2d 832 (1977); Waters v. State, Ala.Cr.App., 360 So.2d 347, cert. denied, Ala., 360 So.2d 358
(1978). A tip may supply the basis for probable cause in and of itself where it discloses: (1) some of the underlying circumstances which justify a conclusion that the informer is credible or his information is reliable; and (2) some of the underlying circumstances tending to demonstrate that, in the specific instance in question, he has drawn his conclusion of criminality in a reliable manner. Aguilar, supra; Hatton, supra. These two tests constitute the dual "prongs" of Aguilar, the "veracity prong" and the "basis of knowledge prong."
 "They constitute the initial standard to be applied in assessing the probative value of an informant's information. If the tip fails one of these prongs, the informant's report may still constitute the sole basis for a finding of probable cause if the information provided is in such detail and minute particularity that a `magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way.' This is the self-verifying tip. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Less detailed information from a reliable source may also be used as grounds for a finding of probable cause where the key elements of the tip are verified or corroborated. Ex parte State ex rel. Attorney General v. State, 286 Ala. 117, 237 So.2d 640 (1970); Payton v. State, 47 Ala. App. 347, 254 So.2d 351 (1971). Finally a tip that will not meet any of these standards may still be used in conjunction with a number of other factors of `further support' to show probable cause." Hatton, supra, at 826. (Emphasis added.)
The rationale behind requiring a showing of credibility and reliability is to *Page 131 
prevent searches based upon an unidentified informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. The mere conclusion of an informant is not sufficient to establish probable cause. Roberson v.State, Ala.Cr.App., 340 So.2d 459 (1976); Young v. State, Ala.Cr.App., 372 So.2d 409 (1979). "There is no litmus paper test for determining probable cause," Hatton, supra, at 829, and each case must be determined in light of its own unique facts and circumstances.
Examining the totality of circumstances here, we find that the warrantless stop and search of appellant's vehicle was constitutionally impermissible because the State failed to prove probable cause. The record in the instant case furnishes no basis for the informant's information or assertions as to the credibility and reliability of the informant. The record is absolutely silent as to how the informant obtained her information about the appellant and his activities. Moreover, the record shows that the law enforcement officers never knew the identity of the informer and, therefore, had no way to determine whether she was trustworthy or not. Therefore, the State failed to satisfy either of the two-prong tests ofAguilar.
Nevertheless, the informer's tip may be considered in determining the existence of probable cause if the tip is verified or corroborated by the officer's own knowledge or observations. During the telephone conversation with Officer Grant on July 19, 1978, the informant revealed appellant's name; that he lived in St. Petersburg, Florida; that he drove a blue 1973 Mazda automobile which contained approximately 100 pounds of marijuana; and that he sold marijuana to John Strome and an undisclosed buyer. Officer Grant had never previously heard of the appellant or Strome.
On the same day, to substantiate the tip, Officer Grant ascertained the address of the undisclosed buyer and telephoned the St. Petersburg Police Department Narcotics Division. He spoke with Detective Jim Rainey who informed him that the appellant had been under investigation for "narcotic trafficking and violations" in Florida. Reputation standing alone is an insufficient basis for probable cause. Roberson,Hatton, and Young, supra. "[R]eputation (normally based upon rank hearsay and community rumor) as an element in determining probable cause should not be given undue weight. . . ." Young, supra, at 413. Reputation may only be considered along with other facts and circumstances in determining probable cause. See also Whitener v. State, Ala.Cr.App., 390 So.2d 1136 (1980).
On July 20, 1978, the informant telephoned the sheriff's department and disclosed: appellant's name, address, color and make of his automobile (1973 blue Mazda), names of two buyers (John Strome and the undisclosed buyer), appellant's departure time (noon on July 20, 1978), and appellant's destination (Florida). That morning Officer Grant and Deputy Price ran a registration check on the Mazda parked at the address furnished by the informer which revealed that appellant was the owner of the car. At this point they decided to set up surveillance of the Bradley Street address. As set out in the facts hereinabove, the officers observed the appellant and others engaged in routine activities about the house. They observed nothing resembling criminal conduct which would verify any detail of the informant's tip. The observed activities in and about the house and automobile were not, in themselves, even suspicious. This court in McCraney v. State, Ala.Cr.App.,381 So.2d 102, 106 (1980), remarked: "The fact that the three subjects went back and forth between the rooms acting suspiciously and carried a paper bag to the automobile would not by itself constitute probable cause for a search."
In Hatton, supra at 829, this court recognized that the probable cause present in that case presented the bare minimum necessary for a valid search without a warrant. Since the facts and circumstances in the case at bar fall far short of the bare minimum requirements of Hatton, we find that the "exigent circumstances coincidental *Page 132 
with probable cause" exception to the Fourth Amendment warrant requirement cannot be applied to this case. Likewise, a search is not justified by what it subsequently uncovers. Shipman v.State, 51 Ala. App. 80, 282 So.2d 696, writ quashed, 291 Ala. 484, 282 So.2d 700 (1973); Rudolph v. State, Ala.Cr.App.,371 So.2d 962, cert. denied, Ala., 371 So.2d 965 (1979). The instant search was therefore illegal and the results thereof should have been suppressed and excluded from the evidence.
REVERSED AND REMANDED.
All the Judges concur, except DeCARLO, J., dissents.