BOOKOUT, Judge.
Sale and possession of lysergic acid diethylamide (LSD); sentence: $15,000 fine and imprisonment for ten years and one day.
Around noon on July 15, 1978, Don Williams, an undercover agent with the Alcohol and Narcotic Division of the Alabama Alcoholic Beverage Control Board (hereinafter ABC), and Charles Gates, a “contract” informant working with that division, visited the Tuscaloosa residence of David Koon while participating in an extensive interstate drug enforcement operation. The previous evening Williams had discussed a possible drug purchase with Koon and had arranged to meet at Koon’s home the following day where the appellant was supposed to deliver some mescaline. After Williams and Gates had been there approximately thirty minutes, the appellant arrived carrying a brown paper bag. They all sat *794 down, and the appellant described an exhausting journey he had taken in a dynamite truck the night before in order to have the drugs there that day. After a few minutes Williams, Gates, Koon and the appellant walked to a rear bedroom where the appellant measured out approximately one ounce of a brown powdered substance spiked with green fragments from a plastic bag he took from the brown sack. He put the measured substance into a smaller plastic bag. Williams testified that Koon and the appellant discussed the price and Koon told Gates the price would be $700 although he could get a better price in the future if he bought in volume. Williams counted out $700 and handed it to Gates who gave Koon the money. The appellant then handed the small bag to Gates. As he was leaving Gates placed the small bag into a leather pouch which he later turned over to Williams and the proper authorities. An analysis of its contents revealed that the substance was LSD rather than mescaline.
Before they left Williams and Gates agreed to return that evening to make other purchases when a courier from Atlanta was due to arrive with a large quantity of drugs. Late that night the agents went back to Koon’s home and participated in another drug deal with Koon. Williams testified that, although the appellant was present at Koon’s residence when this later transaction took place, he was not an actual participant.
Appellant insisted that he never participated in a drug transaction at Koon’s home. He testified that he went there during the afternoon of July 15,1978, to look at Koon’s Doberman pinscher puppies. He averred that while en route to the rear bedroom where the puppies were kept Gates stopped him in the hallway and asked appellant to sell him Dilaudid, which appellant refused.
Appellant’s wife testified that her husband was at home all night on July 14,1978 (rather than driving a dynamite truck all night). Appellant’s employer, Bill Robertson, testified that he and the appellant were building a wine cabinet on the morning of July 15. Refuting the allegation that appellant was present at Koon’s residence when a second drug sale took place, Robertson stated that he and his present wife had dinner and watched television at appellant’s home that night until sometime between 10:00 p.m. and midnight. Appellant’s wife avowed that the appellant did not leave their residence that night after the Robertsons’s departure. Although several witnesses testified to appellant’s good reputation in the community, the appellant had prior convictions for bank robbery and Dyer Act violations in other states.
I
On April 2, 1979, the defense filed a pretrial motion to produce the State’s informant, Charles Gates, as a material witness. A hearing was held thereon on April 7, 1979, and the motion was denied. Likewise, a defense motion to dismiss the charges was refused. Trial was commenced on November 6, 1979.
Charles Gates was not only a paid informant for the State, but was an active participant in and an eyewitness to the transaction in question. He disappeared prior to the instant trial, and defense counsel contends that there was enough State action involved in his disappearance so as to deny appellant his constitutional right to a fair trial pursuant to Amendments V, VI and XIV to the United States Constitution and Article I, § 6, Constitution of Alabama 1901.
The facts indicate that in June 1978 Gates had several drug charges pending against him in Alabama. He began working with undercover agents of the ABC Narcotic Division as a “contract” informant about a month later. Agent Larry Williams, evidence officer in appellant's case, testified that Gates was working with them to “get out of trouble.” Gates’s function was to provide undercover for Agent Don Williams in order to “make cases.” Although there was testimony that he was not initially paid for his work, Agent Larry Williams stated that Gates was paid biweekly wages in addition to expense money for his work in subsequent cases prior to his disappearance in September 1978.
*795 It is obvious that the State did not intend to use Gates as one of its witnesses. ABC Area Supervisor Glenn Shurrett testified that “we try to make our cases so that our officers are the ones who testify.” We find no fault in that procedure because the State is not required to call all witnesses who are competent to testify, and this principle applies even to a special agent or informant who participated in the transaction. Washington v. United States, 275 F.2d 687 (5th Cir.1960). However, a major problem arises here in that before Gates vanished he told two of the ABC agents that he feared for his life and planned to leave the country. Likewise, Agent Larry Williams testified that the State ended Gates’s services because he had “outlived his usefulness to us.”
Since Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), it is clear that the general rule of nondisclosure of witnesses is not always applicable to the government informant. In cases involving the “tipster” type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that the disclosure of his identity is not material and, therefore, not required. However, when the informant is actively involved or is an eyewitness to the crime, disclosure of his identity is required when nondisclosure would deprive the defendant of a fair trial. Ortez v. State, Ind.App., 333 N.E.2d 838 (1975); United States v. Barnes, 486 F.2d 776 (8th Cir.1973); Portomene v. United States, 221 F.2d 582 (5th Cir.1955); McElroy v. State, Ala.Cr.App., 360 So.2d 1060, cert. denied, Ala., 360 So.2d 1067 (1978); Kilgore v. State, 50 Ala.App. 501, 280 So.2d 206 (1973). In such cases the State has the option to provide the information or suffer a dismissal. Roviaro, supra; People v. Goliday, 8 Cal.3d 771, 106 Cal.Rptr. 113, 505 P.2d 537 (1973). The State is thereby placed in a position where it must balance the usefulness and safety of a valuable informant against the possibility of dismissal.
Clearly, we are not concerned here with the failure or refusal of the State to disclose the identity of an informer— Gates’s identity was known even at the preliminary hearing. We are, however, concerned with the power and ability of the State to effectively deny to a defendant evidence which may be crucial to the formulation of a proper defense. The result to the defendant is the same whether the informant is unknown or unavailable. Ortez, supra; Goliday, supra.
It is critical to remember here that the credibility of the opposing testimonies of Agent Don Williams and appellant form the fulcrum upon which the determination of appellant’s guilt or innocence must be balanced. The only evidence against the appellant is the word of Williams.
Because Koon was also facing criminal charges, Gates offered the only chance for the appellant to impeach or contradict the State’s testimony and possibly corroborate his own testimony that he did not participate in the drug transaction. Had Gates’s testimony corroborated appellant’s story, it may well have resulted in an acquittal. However, what the testimony may be or its effect at trial is not the determining factor here.
We reject the State’s notion that the appellant must offer specific proof of what Gates’s testimony would reveal. Under such circumstances it is the material character of the witness, not of his testimony, which must be demonstrated. United States v. Mendez-Rodriguez, 450 F.2d 1 (9th Cir.1971); People v. Mejia, 57 Cal.App.3d 574, 129 Cal.Rptr. 192 (1976). Any specific showing of the testimony is made unlikely and sometimes impossible by the very unavailability of the witness. Therefore, no showing that Gates’s potential testimony would exonerate appellant was required although the appellant did in fact allege in his motion that “if the witness Charles Gates was produced to testify at the Defendant’s trial he would testify that the Defendant did not participate in or commit the alleged drug violation with which he is charged.”
*796 In the instant case the record does not indicate the State deliberately concealed the informant. We recognize that Alabama has very limited authority in bonding or jailing certain witnesses, per § 15-11-12, et seq., Code of Ala.1975. However, Gates was free pending proceedings on several drug charges. He informed two State drug agents of his intention to leave the country, and they did nothing to prevent him from leaving the jurisdiction of the state knowing that he had felony charges pending against him.
The appellant had the right here to formulate his defense uninhibited by government conduct that, in effect, prevented him from interviewing and possibly later calling a witness who was intimately involved in the activity charged in the indictment.
While the government is generally under no obligation to look for defense witnesses, such an obligation may arise where a showing has been made that a material witness was made unavailable to the defense “through the suggestion, procurement or negligence” of the State. Ferrari v. United States, 244 F.2d 132 (9th Cir.1957), cert. denied, sub nom. Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 124, 2 L.Ed.2d 78.
It is of particular interest in this case that the defense and prosecution entered into a stipulation wherein, inter alia, it was admitted that prior to the offense in question Gates had been indicted in Montgomery for the sale of a controlled substance. That case was nol prossed on October 6, 1978. Likewise stipulated was the fact that prior to the instant offense Gates had been arrested in Elmore County on five drug offenses which were submitted to the grand jury on August 8, 1978, and were “no-billed” on February 12, 1979.
Here, the informant had been charged in several felony drug cases made by State ABC agents. From the evidence and clear inferences drawn therefrom, the informant was working his way out of trouble. Put another way, he was informing on others with the understanding that his cases would be dismissed. He was being paid biweekly and was paid for work done on cases after this case which would have covered a period between July and September 1978. The State agents ended his services when his usefulness to them was over. He was paid for services he had performed. He told two State ABC agents he was leaving the country and they acquiesced. One of those agents was an ABC Board supervisor. Although there were several outstanding felony charges against the informant, the ABC agents did nothing to prevent him from leaving this jurisdiction. Additionally, the pretrial hearing reveals no reasonable effort on the part of the State to locate the informant after appellant moved for his production. Velarde-Villarreal v. United States, 354 F.2d 9 (9th Cir.1965).
Our holding today is limited to the facts presented in this case and should not be construed to extend beyond the fact situation here presented for we recognize the general rule that the State is not the guardian of all those who cooperate in criminal investigations. It is not necessary to determine in this case whether the State should do more than furnish an appellant with an informant’s name and last known address when disclosure is required because the facts here preempt that question.
We recognize that to be successful in the fight against unlawful drug traffic law enforcement officers must rely extensively upon the use of informants. We are well aware that: “Informants in drug cases are not Brahmins, nor are they noted for long-term occupancy of well-tended premises. Their disappearance, voluntary or otherwise, is not extraordinary. . . . ” United States v. Super, 492 F.2d 319 (2nd Cir.1974).
We are well aware of the problems facing law enforcement in drug cases. However, we must also recognize the rules set out in cases cited hereinabove that the State or its agents can have no part in depriving a defendant of the right to prepare his defense in a criminal case. This is not a case of a State’s witness merely disappearing. The witness here was a paid in *797 formant, but more importantly the State used him not as a mere informant but as a principal in the transaction. The cases are clear that when an informant is so used by the State, the State may also assume the burden of identifying him or producing him if the material character of his potential testimony is made apparent.
This case must therefore be remanded to the circuit court for a new trial wherein the State must either produce the material witness, Charles Gates, or else suffer a dismissal.
II
An additional issue was raised by the appellant which may likewise present itself on trial. The appellant contends that the trial court committed reversible error in failing to give the appellant’s requested Charge No. 4:
“Ladies and gentlemen of the jury, I charge you that the fact that one associates with a narcotic [sic] dealer in no way calls for an inference that such person is engaged in the criminal traffic of narcotics.”
The refusal of that charge was free of error.
Appellant argues that since that charge was taken directly from dictum in Thomas v. State, AIa.Cr.App., 353 So.2d 54, cert. denied, Ala., 353 So.2d 59 (1977), based on language found in Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), it is a correct statement of the law. We have not been cited to nor have we found a case where the statement contained in the above charge has been approved as a proper charge to a jury. Merely lifting language from an appellate opinion does not insure its acceptability as a correct instruction to the jury. Tate v. State, Ala.Cr.App., 337 So.2d 13 (1976); Knight v. State, 273 Ala. 480, 142 So.2d 899 (1962); Lakey v. State, 258 Ala. 116, 61 So.2d 117 (1952). Each charge must be considered in light of the evidence in the case in which it is requested.
It is evident that the factual situations in Thomas and Sibron, supra, are not analogous to the facts in the case at bar. Those cases dealt with questions of probable cause as applied to the warrantless searches and arrests. Considering the evidence here, Charge No. 4 tended to mislead the jury to believe that such evidence bore directly upon the question of guilt or innocence of the appellant. Furthermore, Thomas and Sibron present factual situations in which the association was the only factor connecting the appellant with the criminal conduct. In the instant case, direct testimony connected the appellant with the illegal drug transaction.
In addition, requested charges which are mere statements of legal principles without instruction as to the effect upon or application to the issues are abstract and may be properly refused. Hudson v. State, Ala.Cr.App., 335 So.2d 208, cert. denied, Ala., 335 So.2d 211 (1976); Cork v. State, 50 Ala.App. 670, 282 So.2d 107 (1973). This court remarked in Hudson, supra, at 211:
“It has long been the rule in Alabama that requested instructions, tendered in a criminal ease, should be written in such a form that they are hypothesized on a ‘belief from the evidence.’ A refusal of instructions not so hypothesized is not error, and a trial judge may properly refuse any requested instruction not predicated upon a consideration of all the evidence.. . . ”
The refusal of appellant’s requested Charge No. 4 was not error. However, as set out in part I hereinabove, the judgment of conviction must be reversed and the cause remanded to the circuit court.
REVERSED AND REMANDED.
All the Judges concur, except DeCARLO, J., dissents.