The appellant was indicted for the unlawful sale of cocaine to Richard White. After a jury trial he was found guilty, fined $22,500.00, and sentenced to ten years in the penitentiary.
On June 8, 1978, Deputies Jimmy Wyatt and Richard White of the Narcotics Division of the Mobile County Sheriff's Department, along with an informant named "Don" and Don's wife, were parked in a van outside a residence on Bellingrath Road in Mobile County. At approximately 8:30 P.M., the informant went inside the residence *Page 467 
and, a short time later, returned to the van and gave Deputy White a package containing a white powder substance. White testified that he then said to the informant, "I'd have to deal with Chester personally myself." At that point, White and the informant returned to the house and the appellant opened the door. White then told the appellant that he had been "ripped off" before, handed him the package of white powder and asked if it was "good stuff." The appellant then responded that it was "good stuff and [White] could try it." White refused to try it and appellant then responded that White could come back later and gave him a telephone number to call. At that point, White gave the appellant ninety dollars.
On cross-examination, White testified that he knew the informant only as "Don" and did not know for sure if that was his correct name. Further, he said that he had never dealt with the informant before the instance in question.
White recalled that at the time the informer had originally gone to the house he [White] saw three silhouetted figures on the curtain of the house. He could not distinguish the three figures, but did see one pass something to another. White searched the informant when the informant left the van. He admitted that the informant may have had an opportunity to pick up something before he went into the house, but it was unlikely because he had watched him from the time he left the van until he went into the house.
White stated that the main reason he went into the house with the package was to determine if the package he had received from the informant was the same package the appellant had given to the informant.
White testified that he and the informant returned to the van, and they drove to the Sheriff's Department, where he subsequently turned the package of white powder over to Deputy Jimmy Wyatt.
Deputy Wyatt testified that he took the packet, delivered to him by Deputy White, to the toxicologist's office and turned it over to Miss Deborah Sennett on June 12, 1978.
Deborah Sennett, an employee of the Department of Forensic Science, testified that she performed certain tests on the powder that had been turned over to her by Deputy Wyatt, and the tests revealed the presence of cocaine.
At the close of the State's case, the appellant requested the disclosure of the informant's name or the acquittal of the appellant. From the record:
 "MR McKNIGHT: Judge, I had asked the District Attorney who was formerly charged with the responsibility of this case, Mr. Lloyd Copeland at a prior time, the exact date I'm not quite certain of. I am looking now, I have the notation, to disclose to me the name of the informant in this case, and he advised me that he did not know the name. I am quite satisfied he told me he felt I was entitled to have such disclosure made. In any event, he firmly agreed to make such a disclosure to me when he ascertained that name."
Prior to making a ruling the court made the following comments:
 "THE COURT: My only problem as I indicated to you in this particular case based on these particular incidents and these particular facts, he should be entitled to the name of the informant. However, my problem is the reasonableness of the request, the timing of the request. At the conclusion of or immediately prior to the conclusion of the State's case. The Court has no problem in saying that if the request were formerly made of this Court, then the Court would be more than happy to so order it at a reasonable time. If the District Attorney failed to obey that order, I think the case easily could be dismissed on the knowledge of the District Attorney prior to this, but the request coming at this time would require formally for the Court to so act, when apparently it was known at the time of the preliminary hearing in November of 1978.
"MR McKNIGHT: What was known, Sir? *Page 468 
 "THE COURT: That there was an informant and that the name of the informant was in fact unknown. That fact was known apparently at the preliminary hearing in District Court on November 9, 1978.
 "MR. McKNIGHT: That fact was known that an informant was utilized but no demand by me, for me at that point there was no reason for me to believe that I would have to make a demand, because I was in the process of trying to locate a possible person who may have been involved.
 "THE COURT: Does the District Attorney state that they do not know the name of the informant and the investigation that the District Attorney has made that you have made a conscientious investigation and your officers made a conscientious investigation today to locate the informant and that you have been unable to do so? Is that what you are telling me?
 "MR. BERTOLOTTI: I called Carol Norris who works for our office. She is our Trial Coordinator. Her job is to find witnesses, and I told her the situation, told her the officers on the case, suggested James Wyatt to her as the first one she should contact. I then, when we took a break in the trial, called her back and she told me that she has not been able to find out the name of the informer. Those are the efforts that have been made. Now, now that we have heard testimony to the effect that Sergeant Smitherman might know something about it, I can get Carol to try to get him at this time. I have called Carol Norris, who is a good, reliable person and whose business it is to find witnesses and she informed me that so far she hasn't come up with anything. That was right after lunch break that I called her.
 "THE COURT: Sergeant Smitherman's name has been mentioned by the witness. I want you to contact Sergeant Smitherman and see if he knows the name of the informant. We'll take a five minute recess for you to do that, or less time.
"(Recess).
 "THE COURT: Let the record indicate that the Defendant and his counsel are in Court together with the District Attorney. Prior to our brief recess, you were to contact your office and have them contact Sergeant Smitherman.
 "MR. BERTOLOTTI: Carol Norris of our office has just informed me that she has contacted Sergeant Smitherman and told her that he does not know who the confidential informant is in this case.
 "MR. McKNIGHT: Your Honor, may I make a very brief statement. I would point Your Honor's attention to this. There has been a default in the process of compiling this case, to record something which ultimately involved requirements which would have necessitated to be disclosed to the defense regardless of when I asked for it, it never could have been given. I don't know if when I asked, how I asked, et cetera is really germane to the issue. If it does not exist, it never could have been produced.
 "THE COURT: The Court will deny the motions of the Defendant. Mr. Canton, will you bring the jury in."
After the appellant's motions were denied, the appellant presented two witnesses, namely: a police officer who testified to the appellant's good character; and the appellant himself.
Appellant stated that he was at the residence of Chester Patrick on Bellingrath Road on the date in question. He recalled that an individual came to the door that night inquiring about "Chester," and the appellant directed him to the back bedroom where Chester Patrick was. Subsequently, the individual left, and, within minutes, Deputy White came to the door and handed the appellant some money.
According to the appellant, Deputy White did all the talking and he, the appellant, was unaware of what was going on. The appellant denied that he had knowledge of the circumstances and nature of the transaction which took place that night and denied selling cocaine to Deputy White. *Page 469 
 I
The appellant's only assertion of error is that the trial court failed to order disclosure of the informant or to acquit the appellant. He argues that the State is under an absolute duty to preserve and to disclose the identity of a participating informer. He insists that to permit the State to place the appellant on trial when the State has failed to make disclosure on the grounds that it did not know the name of the informer would "pervert" the process of criminal justice.
The rule is clearly established that, when an informer is a material witness on the issue of guilt, the State must disclose his identity or suffer a dismissal. Roviaro v. U.S.,353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639; Hatton v. State, Ala.Cr.App.,359 So.2d 822; Davenport v. State, 50 Ala. App. 321,278 So.2d 769. In the present case, the informer was both an eye witness and a participant in the sale of the cocaine, and, thus without question, he was a material witness on the issue of guilt. Under these circumstances, the State must disclose not only the informant's identity, but also all other information it has that might assist the accused in locating the informant. Therefore, although the prosecution need not physically produce the informant as a witness, Taylor v. State, Ala.Cr.App.,371 So.2d 971, it cannot withold information which could be used to locate the informant.
From the record before us, we are unable to determine whether the State disclosed all the information it had on the informer. Although the statements of the assistant district attorney seem to indicate that an effort had been made to identify the informant, no witnesses were called or other evidence produced to attest to the State's good faith efforts to determine the informer's identity.
Therefore, this court directs the circuit court of Mobile County to conduct a hearing to determine what efforts the State made to determine the identity of the informant, and whether the State disclosed all the information it had. The course we plot today is dictated because no voir dire hearing was conducted at trial to determine the State's ability to identify the informant. At the hearing we have directed today, the State should be given an opportunity to disclose all the information it has on the informant, and to determine, through the testimony of knowledgeable witnesses, the identity of the informant.
As a result of the hearing, the circuit court shall make a two-step determination, as follows: (1) whether the State has disclosed all information within its knowledge, and, if so, (2) whether such information is sufficient to identify the informant, taking into consideration all the circumstances of the case.
It does not seem plausible that the only information the State possessed about the informer was the nickname, "Don." However, we recognize that almost nothing is impossible and there may be exceptional or extraordinary circumstances where this could happen.
It is our opinion that the State should be aware that, once it undertakes to use a participating informant in a case, the identity of that informant may later be sought and subject to disclosure. Roviaro v. U.S., supra. Furthermore, once the participation of the informant results in an arrest, the informant may be of no further use to the State in that case, and there may no longer be any need to protect his identity.
Therefore, it is our judgment that the State, absent a showing of exceptional or extraordinary circumstances, cannot satisfy its burden of disclosing the informant's identity by revealing only the nickname, "Don." The State should be able to disclose, not only the informant's full name, but also some method by which the informant might reasonably be contacted, i.e., last known address, telephone number, place of employment, or the original source of contact used by law enforcement officers in their dealings with the informant.
The burden of proving these matters is upon the State and failure to make such proof will call for a dismissal after another *Page 470 
trial. In the event the State sustains the burden, the appellant will not be entitled to relief.
We therefore direct that the Mobile Circuit Court make a record of the transcript of evidence of the hearing and submit it to this court as soon as reasonably possible so that the matter under consideration can be resolved.
REMANDED WITH DIRECTIONS.
All the Judges concur.
 ON RETURN TO REMAND