420 So.2d 798 (1982)
Ex parte: State of Alabama.
Re David SELF, alias
v.
STATE of Alabama.
80-373.
Supreme Court of Alabama.
June 4, 1982.
Rehearing Denied July 9, 1982.
*799 Charles A. Graddick, Atty. Gen., and Joseph G.L. Marston, III, Asst. Atty. Gen., for State.
Joseph G. Pierce of Drake & Pierce, University, for respondent.
TORBERT, Chief Justice.
We granted a writ of certiorari to the Court of Criminal Appeals, 420 So.2d 792, to review that court's judgment which reversed the conviction of respondent, David Self, remanded the case for a new trial and ordered the State to either produce the material witness, Charles Gates, or dismiss the case against respondent. The facts and circumstances involving the issue presented to this Court are adequately set forth in the opinion of the court below.
The issue presented is whether under the facts and circumstances of this case, the State had the obligation of assuring the availability of informant Gates on the trial of the case against respondent Self. If the State has this obligation under the law and the facts, and fails to discharge it, Self's constitutionally mandated guarantee of a fair trial is violated and he cannot be prosecuted for the alleged offense. The critical facts as found by the Court of Criminal Appeals appear to be as follows: The State did not conceal the informant from the respondent; Alabama does not by statute provide the State authority to detain material witnesses; Gates informed state agents of his intention to leave the jurisdiction of the state; and the state agents did nothing to prevent him from leaving the state although the State was aware that Gates had felony charges then pending against him.
The United States Supreme Court, in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), set the minimum standards of protection to be afforded an accused where the informer is an active participant in the illegal activity which results in the subsequent arrest and *800 conviction of the accused. The Supreme Court held that if a confidential informer is a material witness, i.e., an active participant in the illegal transaction which leads to the charges brought against the accused, then the accused is entitled to learn from the State the identity of the confidential informant and his address. We believe that Roviaro establishes the minimum obligation of the State when, as here, an informer becomes an active participant in the illegal transaction. This rule has consistently been followed by our appellate courts. See, Rivers v. State, [MS. February 24, 1981] 414 So.2d 466 (Ala.Crim.App.1981), after remand [MS. June 23, 1981] ___ So.2d ___ (Ala.Crim.App.), writ quashed, [MS. June 4, 1982] (Ala.1982); McElroy v. State, 360 So.2d 1060 (Ala.Cr.App.) cert. denied 360 So.2d 1067 (Ala.1978); Hatton v. State, 359 So.2d 822 (Ala.Cr.App.1977), writ quashed, 359 So.2d 832 (Ala.1978); Kilgore v. State, 50 Ala.App. 501, 280 So.2d 206 (1973).
The Court of Criminal Appeals in Kilgore v. State noted:
"The primary purpose for the disclosure of an informer's name or identity is to prevent a miscarriage of justice in cases where an accused might have been entrapped into committing the offense for which he is prosecuted. The fundamental requirements of fairness compels disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues [as] an active participant therein."
50 Ala.App. at 503.
While Roviaro states the minimum obligation, i.e., disclosure of the identity and address of the informant, the decision also leaves the door open for further disclosure if the particular situation so warrants:
"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informers' testimony, and other relevant factors."
353 U.S. at 62, 77 S.Ct. at 628.
An examination of the facts in this case reveals that the confidential informer, Gates, played a major role in the illegal sale and thus was an active participant; these facts warrant application of the principles established in Roviaro. We agree with the Court of Criminal Appeals in its rejection of the State's argument that Self must offer specific proof of what Gates's testimony would reveal. "It is the material character of the witness, not of the testimony, which must be demonstrated." People v. Mejia, 57 Cal.App.3d 574, 580, 129 Cal.Rptr. 192 (1976). It is inappropriate for this Court "to indulge in any speculation that the interviews would, or would not, have been fruitful to the defense." United States v. Mendez-Rodriguez, 450 F.2d 1, 5 (9th Cir. 1971).
However, we cannot agree that the conduct by the State in this case warrants reversal of the conviction. The State had an obligation to disclose the identity of the informer and his address. The record establishes that the State met this obligation. Thus, the instant question is whether due process requires more than the minimum established in Roviaro.
Self proposes that this Court recognize the State's failure to keep Gates available as infringing upon Self's right to a fair trial guaranteed by the United States and Alabama Constitutions. We cannot agree with this proposition. "The contention that the State was under a duty to maintain contact with [the informant] is not in accord with the authorities on the subject. Neither the State nor the United States can be expected to do the impossible." Taylor v. State, 371 So.2d 971, 974 (Ala.Cr.App.), writ denied, 371 So.2d 975 (Ala.1979). In this case the State could not have kept Gates in the state so that he could testify if Self had wanted to use him in his defense. It is true that charges were pending against Gates for *801 drug-related charges in Montgomery and Elmore Counties, but the State could not have used these charges to hold Gates pending the prosecution of Self. This is true irrespective of the fact that part of the reason Gates worked with the ABC Board was so that these charges would be dismissed. In addition, we know of no Alabama statutes providing for detention or production of witnesses for any kind of case. Judge DeCarlo in his dissent from the majority opinion by the Court of Criminal Appeals adequately expresses our view where he states:
"The majority recognizes that `the government is generally under no obligation to look for defense witnesses,' but it cites Ferrari v. United States, [244 F.2d 132 (9th Cir.1957), cert. denied, sub. nom. Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78.] for the proposition that `such an obligation may arise where a showing has been made that a material witness was made unavailable to the defense "through the suggestion, procurement, or negligence" of the State.' Presumably then, the majority finds that the State was `negligent' in failing to prevent Gates from leaving the jurisdiction prior to appellant's trial, notwithstanding the fact that the majority concedes `Alabama does not have a statutory provision which gives the State authority to detain material witnesses.'
"It is difficult to determine what the majority would have had the State do to detain Gates. As the majority notes, Gates `feared for his life.' The State could have offered him protective custody, but what if Gates had refused the protection? Had the State picked up Gates and incarcerated him pending appellant's trial, we would have [had] no hesitation in ordering that he be released on a writ of habeas corpus. See, Stinson v. State, 43 Ala.App. 257, 188 So.2d 287, cert. den. 279 Ala. 691, 188 So.2d 288. There can be no `negligence' in failing to do that which the State is not authorized or empowered to do.
"In Ferrari, supra, which the majority cites, the Ninth Circuit found no `negligence' on the part of the government in failing to produce the informant. In Ferrari, the informant had been a special undercover employee of the San Francisco Bureau of Narcotics. The defendant's attorney attempted to subpoena the informant by leaving a copy of the subpoena with the Bureau of Narcotics. The head of that Bureau stated that `he had no idea of [the informant's] whereabouts, [and] that he had no intention of finding her.' 244 F.2d at 141. The Ninth Circuit approved the Bureau Chief's action (or inaction), finding that, since the subpoena was not a court order directed to the Bureau, the chief was under no obligation to comply with it by searching for the informant. Further, despite the contention of the defendant in Ferrari that he `was in jail and not free to search out his witnesses or the government's,' 244 F.2d at 142, the Ninth Circuit observed:
`We know of no rule which holds it error for the government to fail to put on the stand a witness, not deemed necessary to its case, who might conceivably have given testimony favorable to the defendant. It is for the defendant to make his own defense.'
"244 F.2d at 141, quoting Deaver v. United States, 155 F.2d 740, 744 (D.C.Cir.), cert. den. 329 U.S. 766, 67 S.Ct. 121, 91 L.Ed. 659 (1946) (emphasis supplied by the Ferrari court).
"The facts in this case do not warrant carving out a special duty for the State to produce informants who have several outstanding felony charges and who appear to be `working [their] way out of trouble.' The very nature of drug traffic cases suggests that the informants in these cases will, perhaps more often than not, be cooperating with law enforcement officers in order to reduce their own criminal liability. If we follow the rationale employed by the majority, then the State will become, contrary to the assertion of the majority, `the guardian of all those who cooperate in criminal investigations.'"
*802 While we recognize that the minimum required by Roviaro is the informant's name and address, we believe that the State also has an obligation to disclose information, if any, which would aid the accused in his search for an informant. This obligation is only to furnish information presently within the possession and control of the State. This does not impose upon the State a duty to gather, seek, or find out any additional information pertaining to the location of the informant.
In this case the hearing conducted revealed all the information possessed by the State concerning the whereabouts of Gates. There is no evidence that the State helped or encouraged Gates to leave the state. There is no evidence that the State withheld any information on Gates. We believe that the requirements of Roviaro have been met in this case. We do not believe the State infringed upon Self's right to a fair trial. The Court of Criminal Appeals erred in ordering the State to produce Gates. The decision by the Court of Criminal Appeals is reversed and the cause remanded.
REVERSED AND REMANDED.
MADDOX, FAULKNER, ALMON, SHORES and BEATTY, JJ., concur.
JONES, EMBRY and ADAMS, JJ., dissent.
ADAMS, Justice (dissenting).
I would affirm the decision of the Court of Criminal Appeals. In doing so, I would not find it necessary to hold that the defendant must be discharged any time the state loses control of a material witness, People v. Mejia, 57 Cal.App.3d 574, 129 Cal. Rptr. 192 (1976). I would not extend Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), requiring that a confidential informer who is an active participant in an illegal transaction must be made known to the accused, with address, if this information is properly requested. But I would apply the rule laid down in Ferrari v. United States, 244 F.2d 132 (9th Cir. 1957), cert. denied sub nom Cherpakov v. United States, 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78 (1957), holding that although the state is generally under no obligation to look for defense witnesses, such an obligation may arise where a showing has been made that a material witness was unavailable to the defense "through the suggestion, procurement, or negligence" of the state. Ferarri v. United States, at 141 (emphasis added).
The facts of this case are sui generis. Gates, the material witness in this case, was being paid bi-weekly to inform on others. His additional pay was the state's promise to dismiss several felony drug charges lodged against him. Gates had been indicted in Montgomery for the sale of a controlled substance and had been arrested in Elmore County on five drug offenses prior to his undercover activities in this case. At one point in time, Gates told state ABC agents that he feared for his life and he was leaving the country. Yet, they did not lift a finger to stop him. Can it conscientiously be said that the state was dealing fairly in these circumstances when it allowed a charged felon to leave the jurisdiction and probably the country without bothering to stop him because his usefulness to them was over? I say not. Furthermore, I think it was their duty and responsibility to jail Gates when they heard from his own lips that he intended to breach the undertaking of his bond. These actions clearly violate the rule that the state cannot negligently allow a material witness to be made unavailable to the defense. Ferarri v. United States, supra. Compounding its wrongdoing, the state dutifully nol-prossed the Montgomery indictment and "no billed" the five drug charges in Elmore County after Gates had left the jurisdiction. This court's ruling today, reversing the Court of Criminal Appeals, opens the door to the state's looking the other way when a paid informant's usefulness is over and to the possible conviction of an innocent defendant. This seems, in my opinion, to offend our constitutional sense of fair play.
JONES and EMBRY, JJ., concur.