TYSON, Judge.
Samuel Boyd was indicted for the violation of the Alabama Uniform Controlled Substances Act under § 20-2-70, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment” and he was sentenced to 15 years’ imprisonment as a habitual felony offender.
On the evening of October 29, 1982, Leonard Williams and Ralph Watkins were working as undercover narcotics officers for the Birmingham Police Department. At some point Williams went into a pool hall and asked two black males, whom he did not know previously, where he could buy some drugs. The two men then left the pool hall with Williams and got into an unmarked car with Williams and Watkins.
As Williams was driving the car on Snavely Avenue, one of the men pointed out another black male, identified as the appellant, sitting on the curb of the street. Williams then stopped the car at the 2400 block of Snavely Avenue and got out. He, approached the appellant and asked him if he was “straight”. (R. 45). The appellant stated he didn’t know Williams so then Williams named some names. The appellant then asked Williams what he wanted. Williams replied that he wanted “a one and one”, which is street talk for a Talwin and a blue. (R. 45-46). The appellant took one peach pill and one blue pill from a prescription bottle and gave them to Williams. Williams paid the appellant $8.00 and left.
When Williams returned to the car he placed the pills in the glove compartment and took the two males back to the pool hall.
The pills were then turned in to Officer Benjamin Clanton. Clanton kept the pills in his evidence locker until they were turned over to Mary Holt of the Department of Forensic Sciences.
Holt, an analytical chemist, performed an analysis on half of the peach pill. She determined that the peach pill contained Pentazocine which is a controlled substance in the State of Alabama. Holt stated that State’s Exhibits 2 and 2-A were in substan *552 tially the same condition as when she received them except for the half of the peach pill which was used for analysis.
I
During the rebuttal argument of the prosecutor, the following occurred:
“MR. WHISONANT: If he wants to know who the unknown black male is, why doesn’t he ask his client.
“MR. DAWSON: Judge, for the record, I move for a mistrial. That’s completely inappropriate. He knows better than that. He’s treading on ground that he knows better than to tread on.
“THE COURT: Overruled.
“MR. WHISONANT: Mr. Dawson thought that that other person, that smoke screen that he’s trying to pull over you, he thought he could help. And if that be true, I believe he would have him up here, he would have him up here testifying. And I submit to you that that person could say anything that would be inconsistent with what the police officer said.
“MR. DAWSON: Judge, for the record, we would renew that motion. There is absolutely no obligation for us to call anybody. You know, the obligation goes the other way.
“THE COURT: All right. I think he’s entitled to respond in kind to much of what you said. So, overruled.
“MR. JOLLY: We except.
“MR. DAWSON: They are treading on constitutional grounds, Judge.
“THE COURT: I have my ear to the ground here, Bill.” (R. 107-108).
The appellant contends that the prosecutor’s remarks were an improper comment on his failure to testify. We must agree.
The above-emphasized remark of the prosecutor can only be regarded as a direct reference to the appellant’s failure to testify. The prosecutor made the blatant remark “... why doesn’t [the defense attorney] ask his client.” (R. 107). This remark is an obvious reference to the appellant’s failure to take the stand. Furthermore, since the officers testified that they didn’t know the names of the two males who accompanied them in the car, one of whom pointed out the appellant to Williams, the appellant was the only one who could have possibly provided the identity of these two men. Thus, in that context, the prosecutor’s remark also could have been construed as an improper comment on the appellant's failure to testify. See Griffin v. State, 393 So.2d 523 (Ala.Crim.App.1981).
Once a proper objection has been made to a direct comment by the prosecutor regarding the accused’s failure to testify, the trial judge must immediately sustain the objection and give curative instructions to the jury. Yarber v. State, 375 So.2d 1231 (Ala.1979). Meade v. State, 381 So.2d 656 (Ala.Crim.App.), cert. denied, 381 So.2d 659 (Ala.1980). The failure to do so is reversible error. Meade, supra; Yarber, supra.
The State argues that the appellant failed to preserve this issue for our review because his objection did not specifically inform the trial judge that he was objecting to the prosecutor’s remark for the reason that it was an improper comment on his failure to testify. We cannot accept this argument.
As can be seen from the record, herein quoted, the defense attorney’s objections were specific enough to apprise the trial judge of the basis for his objection. Bland v. State, 395 So.2d 164 (Ala.Crim.App.1981). Thus, the issue is properly before this court.
The record reveals that the trial judge did not sustain the appellant’s objection to the prosecutor’s improper comment and did not give curative instructions. Therefore, we must reverse and remand this cause to the trial court for a new trial.
II
The appellant alleges the State should have been required to disclose the identity of the two males who accompanied the officers to the 2400 block of Snavely *553 Avenue, and who pointed out the appellant to Williams. Since this matter will most likely be an issue on retrial, we shall address it in this opinion.
“The United States Supreme Court, in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), set the minimum standards of protection to be afforded an accused where the informer is an active participant in the illegal activity which results in the subsequent arrest and conviction of the accused. The Supreme Court held that if a confidential informer is a material witness, i.e., an active participant in the illegal transaction which leads to the charges brought against the accused, then the accused is entitled to learn from the State the identity of the confidential informant and his address. We believe that Roviaro establishes the minimum obligation of the State when, as here, an informer becomes an active participant in the illegal transaction. This rule has consistently been followed by our appellate courts. See, Rivers v. State, [MS. February 24, 1981] 414 So.2d 466 (Ala.Crim.App.1981), after remand [MS. June 23, 1981] — So.2d — (Ala.Crim.App.), writ quashed, [MS. June 4, 1982] (Ala.1982); McElroy v. State, 360 So.2d 1060 (Ala.Cr.App.), cert. denied 360 So.2d 1067 (Ala.1978); Hatton v. State, 359 So.2d 822 (Ala.Cr.App.1977), writ quashed, 359 So.2d 832 (Ala.1978); Kilgore v. State, 50 Ala.App. 501, 280 So.2d 206 (1973).
“The Court of Appeals in Kilgore v. State noted:
‘The primary purpose for the disclosure of an informer’s name or identity is to prevent a miscarriage of justice in cases where an accused might have been entrapped into committing the offense for which he is prosecuted. The fundamental requirements of fairness compels disclosure in such cases where the informer plays a major and active part in bringing about the sale of narcotics and continues [as] an active participant therein.’ 50 Ala.App. at 503 [280 So.2d 206],
“While Roviaro states the minimum obligation, i.e., disclosure of the identity and address of the informant, the decision also leaves the door open for further disclosure if the particular situation so warrants:
‘We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual’s right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible significance of the informers’ testimony, and other relevant factors.’ 353 U.S. at 62, 77 S.Ct. at 628.”
Self v. State, 420 So.2d 798, 799-800 (Ala.1982).
In the case at bar, we hold that the State was not required to disclose the identity of the two males in question. Although they were instrumental in bringing about the sale (one of these two pointed out this appellant to Williams), the extent of their participation ended at this point.
Neither of the two males was present when the actual sale occurred and there was testimony that they were unable to see the sale take place because of their location in the car when, in fact, the sale took place. Thus, the evidence reveals that the two males were not active participants in or eyewitnesses to the sale. By pointing out the appellant to Williams, the two men made the sale possible but did not in any way participate therein. Thus, their testimonies would have been of little significance to the defense. See Johnson v. State, 455 So.2d 997 (Ala.Crim.App.), cert. denied, 455 So.2d 997 (Ala.1984); Yarbrough v. State, 451 So.2d 426. (Ala.Crim.App.1984).
After balancing the interests of the State and those of the appellant, we find that the disclosure of the identity of the two males in question was not warranted in this instance.
*554 For the reasons we have stated above, this cause is hereby reversed and remanded to the trial court.
REVERSED AND REMANDED.
All the Judges concur.