TYSON, Judge.
Michael Warren Springfield, alias, was charged in three separate indictments with the illegal possession of controlled substances, the alteration of the identification numbers on a firearm and receiving stolen property in the first degree. The jury found the appellant “guilty of possession of stolen property in the first degree as charged in the indictment.” Ala.Code § 13A-8-17 (1975). The jury was unable to reach a unanimous verdict with respect to the other two charges. They were subsequently nol prossed upon recommendation of the State. The appellant was sentenced to life imprisonment pursuant to the Habitual Felony Offender Statute.
James Rainey testified that in January, 1985 he purchased a 1984 silver Thunderbird automobile for “just over ten thousand dollars.” He owned the car and was in possession of it during October, 1985.
At approximately 7:00 a.m. on the morning of October 22, 1985, Rainey noticed that the car was missing from his garage. He reported the theft to the police and received a call from them several days later advising him that the car had been recovered and that he would be able to pick it up in a few days.
Rainey subsequently recovered his automobile from the Fultondale police. He testified that he had not given anyone permission to use his automobile on the night of October 21, 1985. He had no weapons or *378 prescription drugs in his car at the time it was stolen.
Sergeant M.N. Sharp of the Fultondale Police Department testified that several days prior to October 24, 1985, he had been instructed by a judge to pick up a white female named Tammy Yeager for violation of parole. Sgt. Sharp had told a street informant that he was looking for her. His informant had supplied Sgt. Sharp with reliable information in the past and he knew of at least three arrests that had been made as a result of this informant’s tips.
On October 24, 1985, Sgt. Sharp's dispatcher received a telephone call from the informant stating that Yeager and a white male named Michael Warren Springfield were in a stolen silver Thunderbird automobile near Finley Avenue. Drugs were reportedly in the car along with a .38 pistol with an altered identification number. Sgt. Sharp received this information from the dispatcher while he was in his police car near Highway 78 and the Westgate shopping area.
When he received the information from the dispatcher, he requested that a tag number for the vehicle be obtained and run through the computer to determine if the car was, in fact, stolen. This was done. The tag number was registered to a Mr. Findlay and there was no indication that the car with this tag number had been stolen.
Sgt. Sharp then called Mr. Findlay on the telephone. Findlay reported to Sharp that, at that time, his car was being driven by his wife who had gone shopping at the Five Points West Shopping Center. Findlay absolutely denied that his car had been stolen.
Sgt. Sharp’s informant called back and again relayed the information concerning the appellant.
Sgt. Sharp then drove his patrol car toward Finley Avenue. As he was turning onto Highway 78 from Finley Avenue he saw “this” Thunderbird driven by the appellant turn into the Westgate shopping area. He called the dispatcher to send a backup unit to the scene.
The appellant drove the automobile in front of a Bargain Town Store. Both Springfield and Yeager exited the vehicle and walked toward the store. Yeager entered the store while the appellant waited outside, pacing back and forth on the sidewalk in front of the store. Yeager was in the store for approximately ten to fifteen minutes. When she exited the store, the appellant walked back to the car and sat in the driver’s seat and shut the car door. Yeager remained outside the car and began talking to the appellant through the window on the driver’s side of the car. During this period of observation, Sgt. Sharp was sitting in his patrol car parked out of sight nearby.
Deputy Blanton from the Jefferson County Narcotics Division then pulled up beside Sgt. Sharp in his vehicle. At this point Yeager got inside the Thunderbird and sat on the passenger’s side. Sgt. Sharp and Deputy Blanton then drove up to the Thunderbird and arrested the appellant and Yeager.
Sgt. Sharp observed what appeared to be a marijuana cigarette on the floor of the car beneath the appellant’s feet at the time he arrested Yeager for parole violation.
A few minutes later, after the appellant and Yeager had been removed from the Thunderbird and placed in separate police vehicles, Deputy Blanton determined that the Thunderbird had indeed been stolen from the Bessemer area.
The automobile was taken to the impound lot of the Fultondale Police Department and was later released to the owner, James Rainey.
The tag on the automobile was later returned to its owner, Mr. Findlay.
Mr. and Mrs. Findlay testified that they did not know who stole the tag from their automobile, a 1985 green Thunderbird. Mr. Findlay testified that he picked up his car tag from Sgt. Sharp at the Fultondale Police Department after it had been stolen.
Deputy Blanton testified that he had known Ms. Yeager prior to her arrest on October 24, 1985 and had recognized her *379 immediately before she was arrested for violating parole.
Following the arrest of Yeager and the appellant, the automobile was searched. Various controlled substances and a pistol with an altered identification number were found inside of the car.
Tammy Yeager testified on the appellant’s behalf. Yeager, who was arrested with the appellant, testified that the drugs and the pistol found in the car were hers. She pled guilty to related charges and was serving time in the penitentiary during the appellant’s trial. Yeager stated that the appellant picked her up on the day in question from a Mrs. Carabelle Taylor’s house where her car was being repaired. She testified that the appellant had initial possession of the automobile and had not told her where he had gotten it. She stated that the appellant had been driving the car all over Birmingham that day.
Mrs. Clarabelle Taylor testified that she was the appellant’s landlord and that she had known him for approximately three years. She said that Yeager called her house on or about October 23, 1985 and asked for the appellant. Shortly thereafter Yeager came to Mrs. Taylor’s house and picked up the appellant. Later, (the next evening) the appellant called Mrs. Taylor from a service station and asked her to give him a ride home because Yeager had left him there.
Mrs. Taylor did not know what kind of car Yeager was in when she picked the appellant up. She stated that Yeager had tried to sell her a pistol at that time.
I
The appellant contends that his war-rantless seizure and arrest was conducted without probable cause. Specifically, he argues that, since the policeman’s attempts to corroborate the information received by the informant were unsuccessful, the informant’s tip was insufficient to supply probable cause for the appellant’s arrest. He alleges error in the trial court’s refusal to grant his motion to suppress all of the evidence obtained as a result of the allegedly illegal arrest.
In determining whether or not the facts in this case warrant a finding of probable cause to arrest, we must apply the “totality of the circumstances” test outlined in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
“[There] [t]he Court observed that probable cause is a fluid concept, unsuited to rigid technical requirements, and that existence of probable cause necessarily turns upon assessment of probabilities in particular fact situations. The Court emphasized that the standard of probable cause is that of probability, not prima facie showing of criminal activity.”
Houk v. State, 455 So.2d 115, 117, (Ala. Crim.App.1984).
“The Court in Gates, supra, clarified its prior holdings in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), by stating:
‘[A]n informant’s “veracity”, “reliability” and “basis of knowledge” are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case.... Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is “probable cause” to believe that contraband or evidence is located in a particular place.’ 103 S.Ct. at 2327, 2328.
“The existence of probable cause must be determined from the facts of each case. Carter v. State, 435 So.2d 137,139 (Ala.Crim.App.1982); Moore v. State, 415 So.2d 1210 (Ala.Crim.App.1982), cert, denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982); Hatton v. State, 359 So.2d 822 (Ala.Crim.App.1977), cert, quashed, 359 So.2d 832 (Ala.1978). One does not have probable cause unless he is possessed of information upon which, if submitted to a magistrate, a warrant would be issued. Ex parte Meeks, 434 *380 So.2d 844 (Ala.), on remand Meeks v. State, 434 So.2d 848 (Ala.Crim.App.1983); Knight v. State, 346 So.2d 478, 481 (Ala. Crim.App.), cert, denied, Ex parte State ex reí. Attorney General, 346 So.2d 483 (Ala.1977), appeal after remand. Knight v. State, 356 So.2d 765 (Ala.Crim.App. 1978). It has been stated that probable cause exists ‘where the facts and circumstances within the officer’s knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed’. Knight, supra, at 481, and cases cited therein.”
Waldrop v. State, 462 So.2d 1021,1028-29, (Ala.Crim.App.1984).
Although the police officer’s attempt to independently corroborate the informant’s tip was unsuccessful, we believe that “the informant’s statement [was] reasonably corroborated by other matters within the officer’s knowledge.” State v. Butler, 461 So.2d 922 (Ala.Crim.App.1984) (quoting Gates, supra). When viewed as a whole, the circumstances surrounding the appellant’s arrest support a finding of probable cause.
It was established at trial that this particular informant had supplied the arresting officer with reliable information in the past which had lead to at least three arrests. The informer supplied the officer with very specific details concerning the suspects and their movements. The officer was given the names and descriptions of the appellant and Yeager and the color, model, tag number and specific location of the automobile. The appellant was in the company of Yeager at the time, who was known by Blanton to have been in violation of her parole. See Houk, supra. When the officer arrived at the Westgate Shopping area he found the appellant to be there, in the company of Yeager, operating a vehicle which fit the description given. The officer then waited until Deputy Blan-ton arrived, positively identifying Yeager before the arrest was made.
Upon consideration of the totality of circumstances surrounding the arrest of this appellant, we cannot say that the unsuccessful attempt to corroborate the informant’s tip was fatal to the establishment of probable cause. We hold, therefore, that this arrest was valid and that the admission of the subsequently discovered evidence was not erroneous. See Channell v. State, All So.2d 522 (Ala.Crim.App.1985); Shute v. State, 469 So.2d 670 (Ala.Crim.App. 1984), and eases cited therein; Houk, supra; Traylor v. State, 439 So.2d 178 (Ala. Crim.App.1983). See also Sterling v. State, 421 So.2d 1375 (Ala.Crim.App.1982).
II
The appellant contends that the State did not present sufficient evidence to support the jury’s verdict. He argues that the State “failed to produce any legal evidence whatsoever that the automobile in which [the appellant] was found was the same automobile which was allegedly stolen from James W. Rainey.”
A
In support of this contention the appellant cites several cases which hold that “in order to establish the identity of [a] stolen vehicle [in connection with a charge of receiving stolen property] there must be evidence of common characteristics [between the vehicle found in the possession of the appellant and that which the owner claims to have been stolen by the appellant] other than make, model and color." (emphasis added). Martin v. State, 461 So.2d 1340, 1342 (Ala.Crim.App.1984). See Cook v. State, 469 So.2d 1350 (Ala.Crim.App.1985); Sherer v. State, 462 So.2d 991 (Ala.Crim. App.1984); Oliver v. State, 450 So.2d 188 (Ala.Crim.App.1984); Parker v. State, 386 So.2d 495 (Ala.Crim.App.1980).
The appellant contends that, since there was no evidence presented as to the vehicles’ identification numbers and the only evidence presented during trial relating to the identity of the vehicles was that they were silver Thunderbirds, the State “utterly failed” to connect the appellant with the automobile stolen from Mr. Rainey. We must disagree with this contention.
*381 The cases cited by the appellant are factually distinguishable from the case at bar. In none of the cases cited was there direct testimony tracing the custody and movement of the automobile following its seizure from the appellant.
Here, Sgt. Sharp testified that the car in which the appellant was arrested was impounded and that he released the car to its owner, James Rainey. (R. 56-57). Certainly this testimony was sufficient to connect the appellant with the stolen automobile. See Johnson v. State, 378 So.2d 1164 (Ala.Crim.App.1979); Cumbo v. State, 368 So.2d 871 (Ala.Crim.App.1978), cert, denied, 368 So.2d 877 (Ala.1978). In addition, the victim, Mr. Rainey, testified that he received his car back from the police following the incident. (R. 43-46). Certainly, this testimony presented sufficient evidence from which the jury could infer that the automobile in which the appellant was found was the same automobile which was allegedly stolen from Mr. Rainey.
B
The appellant also challenges the sufficiency of the evidence presented by the State with reference to the description of the stolen vehicle as contained in the indictment. The indictment charged this appellant with intentionally receiving, retaining, or disposing of “stolen property, to-wit: One Ford two door automobile the value of Nine Thousand Dollars, the property of James W. Rainey_”
The appellant contends that, since there was no testimony indicating that the “silver Thunderbird” in which he was arrested was a “Ford two door automobile” as stated in the indictment, the State “utterly failed” to prove an essential element of the offense. We disagree.
“All of the necessary ingredients or elements of the crime of receiving stolen property ‘may be, and most of them usually are, shown by circumstantial evidence, from which the jury, using their everyday common sense and observation, must draw their conclusions.’ ” (citation omitted, emphasis added).
Eldridge v. State, 415 So.2d 1190, 1197 (Ala.Crim.App.1982); See Ingle v. State, 400 So.2d 938 (Ala.Crim.App.1981).
We do not believe that this hypertechnical, semantical distinction drawn by the appellant renders the evidence presented insufficient. It is common knowledge that a “Thunderbird” is a “Ford”. Presented with a similarly prickly problem, this court profoundly said,
“[T]he fact that two of the animals involved were described in the testimony as ‘sows’ rather than as ‘pigs’ [as charged in the indictment] we consider of no vitiating importance. A ‘sow’ may none the less be a ‘pig’; and a ‘pig,’ doubtless, is often a ‘sow’. Or, at least, so we hold.”
Blackman v. State, 28 Ala.App. 48, 179 So. 389, cert, denied, 235 Ala. 359, 179 So. 390 (1938). See also Lavender v. State, 60 Ala. 60 (1877); Cooper v. State, 392 So.2d 1284 (Ala.Crim.App.1981).
We refuse to assume, as the appellant suggests by implication, that the jury was unaware of the fact that a “Thunderbird" is a type of “Ford”. The State presented sufficient evidence from which the jury could, by fair inference, find the appellant guilty of the offense. Johnson, supra.
Ill
The appellant contends that the trial court erred in sustaining the State’s objections to his question concerning the identity of the confidential informant.
During the pretrial suppression hearing, the following occurred:
“Q. [Mr. Gamble] Let me ask you a few questions. How many times in the past — say a tipster, you were dealing with an informant on this — how many times in the past have you used this informant?
“A. Quite a few times.
“Q. Has the informant’s information in the past led to any arrests and convictions?
“A. Several.
“Q. Is this a paid informant?
“A. No, sir.
*382 “Q. Is the informant somebody that has been arrested in the past and that has been promised leniency in exchange for tips?
“MR. NEUMANN: I object to getting into that.
“THE COURT: Sustained. There is no search in the case that I am aware of.” (R. 6-7).
During the trial the following occurred:
[Mr. Gamble] “Q. I guess this informant kind of works off of commission-type arrangement with you; don’t he?
“A. Commission, you mean money?
“Q. Well, it could be money or some kind of pecuniary reward, some kind of intangible reward; like maybe you won’t prosecution him if he cooperates, for some kind of criminal act maybe he has committed; is that correct?
“A. Yes, sir, we work like that.
“Q. It is not uncommon to do that, is it, with an informant that has a bad record or maybe committed some crimes?
“A. No, sir.
“Q. In fact, some of these crimes could be worse — a lot worse than some of these crimes Mr. Springfield is up here on trial for his life today; isn’t that a fact?
“MR. NEUMANN: I object to that, your Honor.
“THE COURT: Sustained.
“Q. Isn’t it a fact that this informant is Tammy Yeager?
“MR. NEUMANN: Objection as to the identity.
“THE COURT: Sustained.
“Q. Isn’t it also a fact that you agreed not to prosecute Tammy Yeager if she testified and put Mr. Springfield in prison, or just turn him in?
“MR. NEUMANN: Object, your Honor. Trying to get around to the identity of the informant.
“THE COURT: I think I will sustain. I don’t know if Ms. Yeager is going to be here or what. If she is a witness in the case, she will be under oath and subject to cross-examination by everybody. But not knowing just what role she is going to play in the litigation, I am going to sustain.
“Q. Isn’t it also a fact that these charges against Ms. Yeager, she just got out with a few little misdemeanors? “MR. NEUMANN: Objection, your Hon- or.
“THE COURT: Sustained. I will tell the jury just what her predicament is, if you want me to, Roland. I have the files here.
“MR. GAMBLE: That is all right, I will go on.” (R. 59-61).
The appellant insists that the identity of this informant was due to be revealed at trial pursuant an exception to the general rule protecting the identity of an informant from disclosure. We disagree.
A complete statement of the rule is as follows:
“The general rule is that the prosecution is privileged to withhold from the accused disclosure of the identity of an informant, unless it is essential to the defense set up by the accused and necessary to show their innocence. Hood v. State, 47 Ala.App. 192, 252 So.2d 117 (1971); Davenport v. State, 50 Ala.App. 321, 278 So.2d 769 (1973); Hatton v. State, 359 So.2d 822 (Ala.Crim.App.1977); Murphy v. State, 367 So.2d 584 (Ala. Crim.App.), cert, denied, 367 So.2d 587 (Ala.1978); Thornton v. State, 390 So.2d 1093 (Ala.Crim.App.), cert, denied, 390 So.2d 1098 (Ala.1980), cert, denied, 450 U.S. 998, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). In such a case, the burden is on the accused to show why disclosure of the informant’s identity was necessary to show her innocence. Hatton v. State, supra; Thornton v. State, supra. Furthermore, ‘mere supposition or conjecture about the possible relevancy of the informant’s testimony is insufficient to warrant disclosure.’ US. v. Hare, 589 F.2d 242 (5th Cir.1979); Gambrel v. State, 405 So.2d 954 (Ala.Crim.App.), cert, denied, 405 So.2d 957 (Ala.1981).” (emphasis added).
Malone v. State, 452 So.2d 1386, 1390 (Ala. Crim.App.1984).
*383 The appellant made no attempt during the trial to explain how this information would show his innocence. There is no evidence contained in the record that tended to show that the informant, in fact, was a participant or a material witness. In Rivers v. State, 414 So.2d 466 (Ala.Crim. App.1981), cited by the appellant, that the informant was a participant in the crime charged, was apparently a known fact by the parties involved.
Furthermore, even had the appellant satisfied his burden of showing why disclosure of the informant's identity was necessary, we do not believe that any error committed in this regard would have been prejudicial to this appellant. Rule 45, A.R. A.P. This was not a case in which the alleged informant’s identity and/or testimony was “highly relevant” to the issue of the appellant’s guilt “in that he might have disclosed a ‘set up’ [or] throw doubt (sic) upon the guilt of the appellant — ” Hat-ton v. State, 359 So.2d 822, 830 (Ala.Crim. App.1977). See Rivers, supra.
In addition, we note that, at least with respect to controlled substance cases, this court has stated that “... where [an] informant merely supplied information to [a] law enforcement officer to establish probable cause for [a] search ... and prosecution was for possession and not for sale, the trial court properly refused to require disclosure of [the] identity of [the] informant.” Dannelley v. State, 397 So.2d 555, 567 (Ala.Crim.App.), cert, denied, 397 So.2d 577 (Ala.1981). See Malone, supra; Thornton v. State, 390 So.2d 1093 (Ala. Crim.App.), cert, denied, 390 So.2d 1098 (Ala.1980), cert, denied, 450 U.S. 998, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). We believe that the same logic that lead to this rule in controlled substance cases permits us to extend its application to the case at bar. Therefore, we find no error in the trial court’s actions in sustaining the appellant’s objection.
IV
The appellant contends that the trial court abused its discretion in refusing his request for a continuance of the trial or any pre-trial hearings. We disagree.
“The measure of impropriety which must be shown by an appellant to hold the court in error for the denial of a motion for continuance of a criminal trial is gross abuse.” Richardson v. State, 476 So.2d 1247 (Ala.Crim.App.1985). The facts in this case do not warrant a finding of gross abuse of discretion on the part of the trial judge, and they are very similar to those in Richardson, supra, wherein we found no abuse of discretion. This appellant’s attorney was appointed in November. Nevertheless, the appellant waited until the day of trial (in April) to move for this continuance. It is undisputed that the appellant’s appointed attorney was prepared for this trial.
Furthermore, had there been error in this regard, the appellant, by his own admission, was not prejudiced by the judge’s actions in denying the motion. In his brief, the appellant states, “Mr. Gamble, ... in hindsight presented an effective defense _” (Brief of appellant p. 27).
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
AH the Judges concur.